UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

_____

|  |  |  |
|---|---|---|
| ENVIRONMENT ONE CORPORATION, | : | |
| | : | |
| Plaintiff, | : | Court No.  22-00124 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA; | : | |
| OFFICE OF THE UNITED STATES TRADE | : | |
| REPRESENTATIVE; KATHERINE TAI, | : | |
| U.S. TRADE REPRESENTATIVE; | : | |
| U.S. CUSTOMS & BORDER PROTECTION; | : | |
| CHRIS MAGNUS, COMMISSIONER, | : | |
| U.S. CUSTOMS AND BORDER PROTECTION, | : | |
| | : | |
| Defendant. | : | |

_____


**<u>ORDER</u>**

Upon reading plaintiff's motion to amend the summons and defendants' response thereto; defendants' motion to dismiss for lack of subject-matter jurisdiction and, in the alternative, for failure to state a claim upon which relief may be granted, and plaintiff's response thereto; and upon reading and upon consideration of other papers and proceedings had herein, it is hereby

**ORDERED** that plaintiff's motion be, and hereby is denied, and it is further

**ORDERED** that defendants' motion be, and hereby is granted, and it is further

**ORDERED** that this action is dismissed.


_____
Chief Judge


Dated: _____
New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

_____
                                                            :
 ENVIRONMENT ONE CORPORATION,                :
                                                            :
                                 Plaintiff,              :        Court No.  22-00124
                                                            :
                 v.                                         :
                                                            :
UNITED STATES OF AMERICA;                       :
OFFICE OF THE UNITED STATES TRADE         :
REPRESENTATIVE; KATHERINE TAI,              :
U.S. TRADE REPRESENTATIVE;                      :
U.S. CUSTOMS & BORDER PROTECTION;         :
CHRIS MAGNUS, COMMISSIONER,                  :
U.S. CUSTOMS AND BORDER PROTECTION,    :
                                                            :
                                 Defendant.             :
_____

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO AMEND THE SUMMONS AND COMPLAINT AND MOTION TO DISMISS

Pursuant to Rules 12(b)(1), 12(b)(6) and 15(a)(2) of the Rules of the United States

Court of International Trade, defendants, the United States *et. al.*, respectfully request

that the Court deny plaintiff's motion to amend the summons, *see* ECF No. 14, dismiss

this action for lack of subject-matter jurisdiction, and, in the alternative, dismiss this

action for failure to state a claim upon which relief may be granted, for the grounds set

forth in the accompanying memorandum of law.

WHEREFORE, the United States respectfully asks this Court to enter an order denying plaintiff's motion to amend the summons, granting our motion to dismiss, and dismissing this action.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:   /s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Jamie L. Shookman
JAMIE L. SHOOKMAN
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, New York 10278
(212) 264-2107
Attorneys for Defendant

Of Counsel:
Valerie Sorensen-Clark
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

July 15, 2022

# TABLE OF CONTENTS

INTRODUCTION ..............................................................................................................1

BACKGROUND ..............................................................................................................2

   I.     RELEVANT FACTS ...........................................................................................2

       A.  The Section 301 Investigation And Initial Trade Actions ...................................2

       B.  The List 2 Trade And Exclusion Process.............................................................3

       C.  Plaintiff's Claimed Exclusion .............................................................................6

       D.  Plaintiff's Entries And Protests...........................................................................8

  II.    PROCEDURAL HISTORY...................................................................................9

SUMMARY OF THE ARGUMENT ...............................................................................11

ARGUMENT ...................................................................................................................12

   I.     STANDARD OF REVIEW ................................................................................12

       A.  Standard Of Review For Motion To Dismiss Pursuant To USCIT
           R. 12(b)(1)..........................................................................................................12

       B.  Standard Of Review For Motion To Dismiss Pursuant To USCIT
           R. 12(b)(6)..........................................................................................................14

  II.    THE COURT LACKS SUBJECT MATTER JURISDICTION............................15

       A.  The Court Lacks Subject Matter Jurisdiction Under 28 U.S.C. §1581(a) .........16

          i.   Plaintiff Failed To Identify In Its Summons
             The Protests It Seeks To Challenge ...............................................................17

          ii.  Plaintiff Cannot Amend Its Summons Because Its Request To
             Further Identify The Pertinent Protest Is Time-Barred...................................20

       B.  The Court Lacks Subject Matter Jurisdiction Under 28 U.S.C. §1581(i)..........22

          i.   This Case Involves A Protestable Decisions By CBP
             That Fails Within The Scope of 19 § U.S.C .1514(a)....................................24

ii.  Section 1581(a) Provided Plaintiff With A Remedy
That Was Not Manifestly Inadequate ........................................29

III. PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY
BE GRANTED ......................................................................33

CONCLUSION.................................................................................35

## TABLE OF AUTHORITIES

**Cases**

*American Air Parcel Forwarding Co., Ltd. v. United States*,
718 F.2d 1546 (Fed. Cir. 1983)................................................. 23

*Arbaugh v. Y&H Corp.*,
546 U.S. 500 (2006).............................................................. 13

*ARP Materials, Inc. v. United States*,
520 F. Supp. 3d 1341 (Ct. Int'l Trade 2021) ............................... *passim*

*Ashcroft v. Iqbal*,
556 U.S. 672 (2009).......................................................... 14, 34

*Autoalliance Int'l, Inc. v. United States*,
357 F.3d 1290 (Fed.Cir.2004)................................................. 21

*Belgium v. United States*,
551 F.3d. 1339 (Fed. Cir. 2009).............................................. 27

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).......................................................... 14, 34

*Carbon Activated Corp. v. United States*,
6 F. Supp. 3d 1378 (Ct. Int'l Trade 2014), *aff'd* 791 F.3d 132 (Fed. Cir. 2015) ....... 24, 33

*Cemex, S.A. v. United States*,
384 F.3d 1314 (Fed. Cir. 2004)............................................... 27

*Chemsol, LLC v. United States*,
755 F.3d 1345 (Fed. Cir. 2014).............................................. 23, 26

*Conley v. Gibson*,
355 U.S. 41 (1957)............................................................ 17

*DaimlerChysler Corp. v. United States*,
442 F.3d 1313 (Fed. Cir. 2006)..................................................................*passim*

*Degussa Canada Ltd. v. U.S.*,
87 F.3d 1301 (Fed. Cir. 1996)........................................................................... 32

*Eastern Transp. Co. v. United States*,
272 U.S. 675 (1927)........................................................................................... 13

*Erwin Hymer Grp. N. Am., Inc. v. United States*,
930 F.3d 1370 (Fed. Cir. 2019)....................................................................... 23

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014)........................................................................................... 15

*Hartford Fire Ins. Co. v. United States*,
544 F.3d 1289 (Fed. Cir. 2008)....................................................................... 24

*Husteel Co., Ltd. v. United States*,
375 F. Supp. 3d 1317 (Ct. Int'l Trade 2019) ........................................... 14, 33

*Hutchison Quality Furniture, Inc. v. United States*,
827 F.3d 1355 (Fed. Cir. 2016)............................................................ 14, 15, 27

*Inspired Dev. Grp., LLC v. Inspired Prod. Grp., LLC*,
938 F.3d 1355 (Fed. Cir. 2019)....................................................................... 13

*Int'l Custom Prods., Inc. v. United States*,
467 F.3d 1324 (Fed. Cir. 2006)....................................................................... 23

*Juice Farms, Inc. v. United States*,
68 F.3d 1344 (Fed. Cir. 1995)............................................................. 24, 31, 32

*McMahon v. United States*,
342 U.S. 25 (1951).............................................................................................. 13

*McNutt v. Gen. Motors Acceptance Corp.*,
298 U.S. 178 (1936)........................................................................................... 13

*Nat'l Nail Corp. v. United States*,
335 F. Supp. 3d 1321 (Ct. Int'l Trade 2018) ............................................... 24

*Otter Prod., LLC v. United States,*
70 F. Supp. 3d 1281, 1297 (Ct. Int'l Trade 2015), *aff'd*, 834 F.3d 1369
(Fed. Cir. 2016) ..................................................................................... 21, 22, 31

*Otter Prod., LLC v. United States*,
532 F. Supp. 3d 1345 (Ct. Int'l Trade 2021)................................. 17, 19, 21, 31

*Pollak Import–Export Corp. v. United States*,
52 F.3d 303 (Fed.Cir.1995)................................................................. 18, 21

*Power Analytics Corp. v. Operation Tech., Inc.*,
820 F. App'x 1005 (Fed. Cir. 2020) ........................................................ 34

*Rack Room Shoes v. United States*,
718 F.3d 1370 (Fed. Cir. 2013)......................................................... 14, 34

*Ruckelshaus v. Sierra Club*,
463 US 680 (1993)....................................................................................... 13

*Shulthis v. McDougal*,
225 U.S. 561 (1912) ............................................................................. 18, 19

*Steel Co. v. Citizens For A Better Env't*,
523 U.S. 83 (1998).............................................................................. 12, 13

*StoreWALL, LLC v. United States*,
644 F.3d 1358 (Fed. Cir. 2011)............................................................... 26

*Sunpreme Inc. v. United States*,
892 F.3d 1186 (Fed. Cir. 2018)........................................ 22, 23, 24, 27, 19

*Sunpreme Inc. v. United States*,
946 F.3d 1300 (Fed. Cir. 2020)............................................................... 25

*Thyssenkrupp Steel N. Am., Inc. v. United States*,
886 F.3d 1215 (Fed. Cir. 2018)......................................................... 26, 27

*TR International Trading Co. v. United States*,
433 F. Supp. 3d 1329 (Ct. Int'l Trade 2020) ........................................ 27

*United States v. Cotton*,
535 U.S. 625 (2002).................................................................................... 12

*United States v. Mitchell*,
445 U.S. 535 (1980).................................................................................... 13

*United States v. Uniroyal, Inc.*,
687 F.2d 467 (C.C.P.A. 1982) ................................................................ 23

*VWP of Am., Inc. v. United States*,
30 C.I.T. 1580 (2006) ........................................................................ 17, 18

*Wally Packaging, Inc. v. United States*,
578 F. Supp. 1408 (Ct. Int'l Trade 1984) .............................................. 13

*Wuxi Seamless Oil Pipe Co., Ltd. v. United States*,
780 F. Supp. 2d 1337 (Ct. Int'l Trade 2011) ................................................. 15

*Xerox Corp. v. United States*,
289 F.3d 792 (Fed. Cir. 2002)................................................... 234, 25, 26, 17

**Statutes**

5 U.S.C. § 706(2) ................................................................................ 10

19 U.S.C. § 1500(c) ............................................................................ 25

19 U.S.C. § 1500(d) ............................................................................ 25

19 U.S.C. § 1514 .................................................................................. 2

19 U.S.C. § 1514(a) .............................................................. 15, 16, 24, 27

19 U.S.C. § 1514(a)(2)............................................................ 25, 27, 28, 19

19 U.S.C. § 1515 ................................................................................ 16

19 U.S.C. § 2411 .................................................................................. 1

28 U.S.C. § 1581 ................................................................................ 14

28 U.S.C. §§ 1581(a) ...................................................................... *passim*

28 U.S.C. § 1581(i) ........................................................................ *passim*

28 U.S.C. § 2632(b) .................................................................. 17, 20, 21, 30

28 U.S.C. § 2636(a) ..................................................................... 20, 21

Trade Act of 1974

    Section 301........................................................................... *passim*

    Section 302(b) ............................................................................. 2

**Harmonized Tariff Schedule of the United States**

Chapter 85

  Heading 8536

    Subheading 8536.50.70........................................................................ 4, 8

Chapter 99

  Heading 9903

    Subheading 9903.88.02 .................................................................... 8, 28

    Subheading 9903.88.20 ................................................................. 6, 8, 28

**Rules**

USCIT Rule 3(e) ................................................................................ 22

USCIT Rule 12(b)(1) ............................................................... 1, 12, 13

USCIT Rule 12(b)(6) .................................................................... 1, 14

USCIT Rule 15(a)(2) ......................................................................... 1

**Regulations**

19 C.F.R. § 159.1 (2020) ............................................................... 25

**Other Authorities**

*Initiation of Section 301 Investigation; Hearing; and Request for
Public Comments: China's Acts, Policies, and Practices Related to Technology
Transfer, Intellectual Property, and Innovation,*
82 Fed. Reg. 40, 213 (USTR Aug. 24, 2017) .................................... 2

*Findings of the Investigation into China's Acts, Policies, and Practices
Related to Technology Transfer, Intellectual Property, and Innovation Pursuant to
Section 301 of the Trade Act of 1974* (USTR Mar. 22, 2018), ..................................... 2, 3

*Notice of Action and Request for Public Comment Concerning Proposed
Determination of Action Pursuant to Section 301: China's Acts, Policies, and
Practices Related to Technology Transfer, Intellectual Property, and Innovation,*
83 Fed. Reg. 14,906 (USTR Apr. 6, 2018) ......................................... 3

*Notice of Action and Request for Public Comment Concerning Proposed
Determination of Action Pursuant to Section 301: China's Acts, Policies, and
Practices Related to Technology Transfer, Intellectual Property, and Innovation,*
83 Fed. Reg. 28,710 (USTR June 20, 2018) ...................................... 3

*Notice of Action Pursuant to Section 301: China's Acts, Policies, and
Practices Related Technology Transfer, Intellectual Property, and Innovation ,*
83 Fed. Reg.40,823 (USTR Aug. 16, 2018) ............................... 3, 4, 31

*Procedures to Consider Requests for Exclusion of Particular Products From the
Additional Action Pursuant to Section 301: China's Acts, Policies, and Practices*

*Related to Technology Transfer, Intellectual Property and Innovation,*
83 Fed. Reg. 47,236 (USTR Sept. 18, 2018) ........................................................... 4, 6, 31

*Notice of Product Exclusions: China's Acts, Policies, and Practices*
*Related to Technology Transfer, Intellectual Property, and Innovation,*
84 Fed. Reg. 52,553 (USTR Oct. 2, 2019) ................................................................ 6, 30

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

_____

|  |  |  |
|---|---|---|
| ENVIRONMENT ONE CORPORATION, | : | |
| | : | |
| Plaintiff, | : | Court No.  22-00124 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA; | : | |
| OFFICE OF THE UNITED STATES TRADE | : | |
| REPRESENTATIVE; KATHERINE TAI, | : | |
| U.S. TRADE REPRESENTATIVE; | : | |
| U.S. CUSTOMS & BORDER PROTECTION; | : | |
| CHRIS MAGNUS, COMMISSIONER, | : | |
| U.S. CUSTOMS AND BORDER PROTECTION, | : | |
| | : | |
| Defendant. | : | |

_____

## <u>MEMORANDUM IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO AMEND THE SUMMONS AND DEFENDANTS' MOTION TO DISMISS</u>

Pursuant to Rules 12(b)(1), 12(b)(6) and 15(a)(2) of the Rules of the United States

Court of International Trade, defendants, United States *et. al.* (the Government), submits

this memorandum in support of our opposition to plaintiff's motion to amend the

summons, and in support of our motion to dismiss for lack of subject-matter jurisdiction

and, in the alternative, for failure to state a claim upon which relief may be granted.

## <u>INTRODUCTION</u>

This action was filed by plaintiff, Environment One Corporation (Environment

One or plaintiff), pursuant to 28 U.S.C. §§ 1581(a) and (i).  Plaintiff challenges the

determination by U.S. Customs and Border Protection (CBP) not to apply an exclusion to

duties imposed under section 301 of the Trade Act of 1974 (Section 301) on certain

entries of pressure switches.  Plaintiff also claims that the Office of the United States

Trade Representative (USTR) and CBP unlawfully expanded 19 U.S.C. § 1514 by requiring importers to protest entries as a prerequisite to claiming exclusions from Section 301 duties.

For the reasons discussed below, the Court should deny plaintiff's motion to amend the summons.  In addition, the Court should dismiss this case because it does not have subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1581(a) or (i), and in the alternative, dismiss this case because plaintiff has failed to state a claim upon which relief can be granted.

## **BACKGROUND**

## I.      **RELEVANT FACTS**

### A.  **The Section 301 Investigation And Initial Trade Actions**

On August 14, 2017, the President issued a memorandum to the USTR stating that China had implemented laws, policies, and practices and had taken actions related to intellectual property, innovation, and technology that may negatively impact United States industries.  *See Initiation of Section 301 Investigation; Hearing; and Request for Public Comments: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 82 Fed. Reg. 40,213, 40,213 (USTR Aug. 24, 2017).  The President directed the USTR, consistent with section 302(b) of the Trade Act of 1974 (the Trade Act), to investigate whether China's conduct may be harming American interests.  *Id.*

On August 18, 2017, the USTR initiated an investigation into a wide range of practices by the Chinese government to determine whether its conduct was actionable under Section 301.  *Id.*  On March 22, 2018, the USTR made specific findings based on

2

the information gathered in its Section 301 investigation.  *Findings of the Investigation into China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation Pursuant to Section 301 of the Trade Act of 1974* (USTR Mar. 22, 2018).

On April 6, 2018, the USTR determined that China's conduct was actionable under Section 301.  *Notice of Determination and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 14,906, 14,906 (USTR Apr. 6, 2018).  The USTR proposed an additional 25 percent *ad valorem* duty on products from China covered by a list of 1,333 tariff subheadings with an annual trade value of approximately $50 billion.  *Id.*

The USTR thereafter issued additional lists of tariffs as a result of the Section 301 investigation.  On June 20, 2018, the USTR announced the imposition of List 1, which covered 818 tariff subheadings with an approximate annual trade value of $34 billion.  *Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 83 Fed. Reg. 28,710, 28,711 (USTR June 20, 2018).

The USTR next issued List 2, which covers the products that are at issue in the present action.

### B.  The List 2 Trade Action And Exclusion Process

On August 16, 2018, the USTR issued List 2.  *Notice of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer,*

*Intellectual Property, and Innovation*, 83 Fed. Reg. 40,823 (USTR Aug. 16, 2018)

(*August 2018 Notice of Action*).  This set of additional 25 percent *ad valorem* Section 301

duties on products from China covered by 284 tariff subheadings, including "[c]ertain

specified electronic and electromechanical snap-action switches, for a voltage not

exceeding 1,000 V," of subheading 8536.50.70, Harmonized Tariff Schedule of the

United States (HTSUS).  *Id*. at 40,835.  The notice also stated that importers should

contact CBP "[f]or questions on customs classification or implementation of additional

duties on products identified in Annex A to this Notice."  *Id.* at 40,823.

In addition to announcing the imposition of List 2, the *August 2018 Notice of*

*Action* announced that the USTR would establish an exclusion process, whereby U.S.

stakeholders could request that particular products classified within a tariff heading be

excluded from the additional tariffs.  *Id*. at 40,824.  On September 18, 2018, the USTR

announced exclusion request procedures for List 2.  *Procedures to Consider Requests for*

*Exclusion of Particular Products From the Additional Action Pursuant to Section 301:*

*China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual*

*Property and Innovation*, 83 Fed. Reg. 47,236 (USTR Sept. 18, 2018) (*List 2 Exclusion*

*Procedures*).  The notice stated that any granted exclusion requests would be retroactive

to August 23, 2018, the effective date of the List 2 duties.  *Id.* at 47,236.  The notice also

instructed importers to identify particular products in their requests in terms of physical

characteristics, as the USTR would not consider exclusion requests that identify products

in terms of the identity of a producer, importer, ultimate consumer, actual use or chief

use, or trademark or tradenames.  *Id.* at 47,236-37.  Finally, the notice instructed

importers to contact CBP "[f]or questions on customs classification or implementation of additional duties." *Id.* at 42,236.

The USTR also maintained a webpage entitled "China Section 301 – Tariff Actions and Exclusion Process" (hereinafter the "301 Webpage"[1]), which provided detailed information on the List 2 exclusion process. For example, the 301 Webpage linked to the public docket where interested parties could file or comment on exclusion requests, and it contained an Excel tracker containing all publicly filed requests. The 301 Webpage also linked to FAQs (hereinafter the "List 2 FAQs") explaining multiple ways for interested parties to track exclusion requests. The List 2 FAQs encouraged importers to file comments on exclusion requests submitted by other interested parties, and they also stated in relevant part:

> Q: Will exclusions apply only to the company that submitted the request, or more broadly to the product?
>
> A: An exclusion, if granted, will apply to the particular product covered by the exclusion, and will not be tied to particular producers or exporters.

List 2 FAQs at 4.

The USTR also maintained a Section 301 Hotline to assist members of the public in navigating the exclusion process and to provide information and guidance. The Section 301 Hotline also answered questions, including the FAQs located on the 301 Webpage. When appropriate, the Section 301 Hotline referred callers to CBP. The Hotline number was included in the Federal Register Notice announcing the exclusion

---

[1] The 301 Webpage is available at https://ustr.gov/issue-areas/enforcement/section-301-investigations/tariff-actions.

request procedures for List 2, *see List 2 Exclusion Procedure*, 83 Fed. Reg. at 47,236, and it was also available on the USTR's 301 Webpage.

### C. Plaintiff's Claimed Exclusion

On October 2, 2019, the USTR granted product exclusions to certain merchandise entered from August 23, 2018 to October 2, 2020.  *Notice of Product Exclusions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 52,553 (USTR Oct. 2, 2019) (*October 2019 Notice of Product Exclusions*).  These exclusions were annotated under heading 9903.88.20, HTSUS, and Chapter 99, Subchapter III, Note 20(y).  *Id.* at 52,555.  The notice stated that "the exclusions are available for any product that meets the description in the Annex, regardless of whether the importer filed an exclusion request."  *Id.* at 52,554.  The notice also explained that "U.S. Customs and Border Protection will issue instructions on entry guidance and implementation."  *Id.*

On October 11, 2019, in accordance with the *October 2019 Notice of Product Exclusions*, CBP issued Cargo Systems Messaging Service (CSMS) #40208881, entitled "3rd Round of Products Excluded from Section 301 Articles of China Specific to Tranche 2 ($16B Action)."[2]  This guidance message was available on CBP's Trade Remedy Website,[3] and a link to the message was also available along with the *October 2019 Notice of Product Exclusions* on the USTR's 301 Webpage.  CSMS #40208881 explains the process for receiving a refund of Section 301 duties as follows:

---

[2] CSMS #40208881 is available at https://content.govdelivery.com/bulletins/gd/ USDHSCBP-26589f1?wgt_ref=USDHSCBP.

[3] CBP's Trade Remedy Website is available at https://www.cbp.gov/trade/programs-administration/trade-remedies.

To request a refund of Section 301 duties paid on previous imports of products granted duty exclusions by the USTR, importers may file a Post Summary Correction (PSC) if within the PSC filing timeframe. If the entry is beyond the PSC filing timeframe, importers may protest the liquidation.

On May 22, 2019, prior to the *October 2019 Notice of Product Exclusions*, CBP issued CSMS #19-000260, entitled "Section 301 Products Excluded from Duties - Liquidation Extension Request."[4]  This guidance was available on CBP's Trade Remedy Website.  In addition to the guidance set forth above, CSMS #19-000260 explained the effect of filing a protest as follows:

> If a protest is filed, CBP will postpone making a determination on protests that include a claim identifying a pending product exclusion.  Once USTR completes the exclusion processing, CBP will process these protests pursuant to USTR's exclusion determination.  That is, CBP will refrain from denying or granting a party's protest before the importer receives a final determination from USTR regarding its product exclusion request.

In another case before this Court, the Court described the Section 301 retroactive duty exclusion process as follows:

> In short, the USTR and Customs established a system under which parties could apply for exclusions and could benefit from other parties' exclusion requests granted by the USTR. Insofar as the exclusions applied retroactively to entries for which importers had previously paid Section 301 tariffs, Customs would effectuate the exclusions by reclassifying imports to Section 301-duty-free HTSUS subheadings upon an importer's timely protest of the entry's original liquidation.

*ARP Materials, Inc. v. United States*, 520 F. Supp. 3d 1341, 1350 (Ct. Int'l Trade 2021).

---

[4] CSMS #19-000260 is available at https://content.govdelivery.com/accounts/ USDHSCBP/bulletins/246a1d3.

### D.  Plaintiff's Entries And Protests

Plaintiff's Exhibit to its first amended complaint contains 31 entries filed at either the Port of Newark/New York or the Port of JFK between October 11, 2019, and July 20, 2020.  ECF No. 16 at 10.  Plaintiff entered the subject merchandise under statistical subheading 8536.50.7000, HTSUS, which is a duty-free provision that is subject to Section 301 duties.  Plaintiff also claimed the exclusion to Section 301 duties annotated under heading 9903.88.20, HTSUS, and Chapter 99, Subchapter III, Note 20(y).  CBP liquidated the entries between September 4, 2020, and June 25, 2021, classifying the merchandise under subheading 8536.50.7000 and assessing Section 301 duties under heading 9903.88.02, HTSUS, at a rate of 25 percent *ad valorem*.  Declaration of Norine Leach in Support of Defendants' Motion to Dismiss (hereinafter "CBP Decl.") at ¶¶ 4-6.

On May 26, 2021, plaintiff filed Protest No. 4601-21-127857, challenging CBP's liquidation of its entries with the assessment of Section 301 duties.[5]  *Id.* at ¶ 7.  Plaintiff subsequently filed Protest Nos. 4601-21-127894 and 4601-21-127895 on May 29, 2021; Protest No. 4601-21-127966 on June 4, 2021; Protest No. 4601-21-128225 on June 15, 2021; and Protest No. 4601-21-128666 on July 14, 2021.  *Id.* at ¶ 8.

On September 9, 2021, CBP denied Protest No. 4601-21-127894 as untimely, as it was filed more than 180 days after the date of liquidation.  *Id.* at ¶ 9.  Plaintiff's timely-filed protests (Protest Nos. 4601-21-127857, 4601-21-127895, 4601-21-127966, 4601-21-128225 and 4601-21-128666), in turn, contained no product-specific information other than the description in the commercial invoices stating that the products were

---

[5] It does not appear that plaintiff intends to include Protest No. 4601-21-127857 in this action.  However, we include it in this section for the sake of completeness.

"pressure switches." *Id.* at ¶ 10.   As a result, on October 19, 2021, CBP denied these

five protests for "insufficient documentation to support claim," noting that it had reached

out to plaintiff's broker three times to request the necessary information with no

response.[6] *Id.*

## II.      PROCEDURAL HISTORY

On April 15, 2022, plaintiff initiated this action by filing a Form 4 summons,

described on the Court's website as a "General Summons, Rule 3(a)."  ECF No. 1

(Summons).  The Summons did not contain any protest or entry numbers, nor did it

identify 28 U.S.C. § 1581(a) as a basis for jurisdiction.

Plaintiff filed a complaint on the same day as the Summons, *see* ECF No. 2,

indicating that it contests CBP's denials of its timely-filed protests pursuant to 28 U.S.C.

§ 1581(a).  Complaint at ¶ 6.  The complaint also states that plaintiff asserts jurisdiction

pursuant to 28 U.S.C. § 1581(i) for "[t]he entries for which no protests were filed within

---

[6] Plaintiff subsequently filed Protest No. 4601-21-129795 on November 4, 2021.  CBP Decl. at ¶ 11.  The protest was filed only as to Entry No. 94D-15344061, which was originally covered by both Protest Nos. 4601-21-127857 and 4601-21-127895, but the protest appears to include entry documents for all 23 entries covered by Protest Nos. 4601-21-127895, 4601-21-127966, 4601-21-128225, and 4601-21-128666.  *Id.*  Under the "Reason for Protest" in ACE, plaintiff stated "ALL ENTRIES ORIGINALLY FILED TIMELY UNDER PROTESTS 460121127895, 460121127966, 460121128225, AND 460121128666," claiming that additional supporting documentation was now attached for these entries.  *Id.*

CBP denied Protest No. 4601-21-129795 on December 2, 2021, on the basis that Entry No. 94D-15344061 had already been covered by previous protests that were denied.  *Id.* at ¶ 12.  That same day, plaintiff filed Protest No. 4601-21-130013, in which it essentially re-filed Protest No. 4601-21-129795, submitting the same information for the same entries, and using the exact same language in its "Reason for Protest," but listing all 23 entries, rather than just Entry No. 94D-15344061.  *Id.* at ¶ 13.  CBP denied this protest on December 9, 2021, because, as with Protest No. 4601-21-129795, the entries covered by the protests had already been the subject of earlier protests that were denied.  *Id.*

180 days of liquidation and those entries for which protests were filed beyond the 180 days after liquidation." *Id.* ¶ 7.  Specifically, plaintiff claims that defendants "exceeded their authority under the trade act and in all other ways in interposing the Protest Statute, its time limits and other formal requirements to decisions by the USTR despite that statute applying ONLY to certain enumerated CBP decisions and therefore acted 'not in accordance with the law' and 'in excess of statutory authority.'" *Id.* at ¶ 24 (quoting the Administrative Procedure Act, 5 U.S.C. § 706(2)).  An attachment to the complaint, labeled "Exhibit 1," contains a spreadsheet listing 34 entries, as well as Protest Nos. 4601-21-127894, 4601-21-127895, 4601-21-127966, 4601-21-128225 and 4601-21-128666.  The Exhibit states at the top, "Entries for 1581(a) and/or 1581(i) claim."  Next to a column titled "Liquidation/ Protest" the exhibit states "(x=1581(i) only)."  In another column titled, "Date Denied," some entries contain a date, and others just state "x."

On May 10, 2022, plaintiff filed a "Motion to Amend Summons" seeking to include a Form 1 Summons, *see* ECF No. 11 (first motion to amend), which is described on the Court's webpage as "Summons in 28 U.S.C. § 1581(a), Rule 3(a)(1)."  According to the motion, "[a]s the Complaint alleges jurisdiction pursuant to 28 U.S.C. §1581(a) <u>and</u> (i), the Office of the Clerk requested that a Form 1 Summons also be filed so that the relevant entries and protests may be obtained from the port."  First motion to amend at 2 (emphasis in original).  The first motion to amend referred to an accompanying "amended or corrected version of the complaint," *see id.*, but it did not attach a proposed amended complaint.

On May 27, 2022, we filed a consent motion to extend the time for the Government to respond to both the complaint and the first motion to amend.  ECF No.

12.  The Court granted our motion on the same day, ordering us to respond to both documents by July 15, 2022.  ECF No. 13.

On June 21, 2022, plaintiff filed a "Consent Motion to Amend Motion to Amend Summons and Amend Complaint."  ECF No. 14 (hereinafter "second motion to amend"). This motion sought to provide "a clearer listing of the entries in the case and Plaintiff's claims with respect to those entries," *see id.* at 2, and it attached a revised exhibit to the complaint specifying the jurisdictional bases alleged for each listed entry.  *Id.* at 59.  The motion also sought to withdraw three entries from the case, "as refunds have already been issued on two of those entries and one entry involved no duty."  *Id.* at 2.

We consented to the filing of the second motion to amend, but not to the ultimate relief that it requested.  Specifically, we consented to plaintiff revising its first motion to amend, but we did not consent to the filing of either an amended summons or an amended complaint.

On June 23, 2022, the Court granted the second motion to amend (ECF No. 15) and deemed filed the first amended complaint (ECF No. 16) (First Am. Compl.).  For purposes of this motion, we note that the first amended complaint is the operative pleading in this case, but we reiterate our objection to the filing of this document. Notwithstanding the two consecutive procedural motions by plaintiff, plaintiff's request to amend the summons is still pending, and the current summons that forms the basis for the discussion below is the one dated April 15, 2022.  *See* ECF No. 1.

## SUMMARY OF THE ARGUMENT

The Court lacks subject-matter jurisdiction pursuant to 28 U.S.C. § 1581(a) because the summons was jurisdictionally defective, as it did not identify the protests

plaintiff seeks to challenge.  Moreover, plaintiff first moved to amend its summons to identify the relevant protests more than 180 days after they were denied.  As a result, these protests are time-barred, and plaintiff cannot amend its summons to cure the jurisdictional defect that precludes jurisdiction under section 1581(a).

The Court also lacks subject-matter jurisdiction pursuant to 28 U.S.C. § 1581(i).  Section 1581(i) is a residual grant of jurisdiction, and no jurisdiction exists when another subsection of 1581 provides a remedy that was not manifestly inadequate.  Here, the decision in question, CBP's liquidation of plaintiff's entries without the benefit of its claimed exclusion, was a protestable decision.  Because plaintiff could have timely protested all of the subject entries, and challenged any protest denial before this Court, section 1581(a) provided a remedy that was not manifestly inadequate.

In the alternative, the Court should dismiss this action because plaintiff has failed to state a claim upon which relief may be granted.  The first amended complaint only makes conclusory allegations regarding defendants' purportedly *ultra vires* actions.  Without alleging facts detailing the nature of the products at issue, how they qualify for the claimed exclusion, or how defendants acted beyond their statutory authority, the first amended complaint cannot survive a motion to dismiss.

## ARGUMENT

### I.   STANDARD OF REVIEW

#### A.  Standard Of Review For Motion To Dismiss Pursuant To USCIT R. 12(b)(1)

Subject-matter jurisdiction "involves a court's power to hear a case, [and it] can never be forfeited or waived."  *United States v. Cotton,* 535 U.S. 625, 630 (2002).  The Court's determination of subject-matter jurisdiction is a threshold inquiry.  *Steel Co. v.*

*Citizens For A Better Env't*, 523 U.S. 83, 94-95 (1998).  When jurisdiction is challenged

pursuant to Rule 12(b)(1), a plaintiff has the burden of establishing the basis for

jurisdiction.  *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *see*

*also Wally Packaging, Inc. v. United States*, 578 F. Supp. 1408, 1410 (Ct. Int'l Trade

1984) (noting that "[w]hen the Court's jurisdiction is challenged, the party asserting

jurisdiction has the burden of establishing that jurisdiction exists").

    Whether jurisdiction exists is a question of law for the Court.  *Inspired Dev. Grp.,*

*LLC v. Inspired Prod. Grp., LLC*, 938 F.3d 1355, 1360 (Fed. Cir. 2019) (citation

omitted).  "The objection that a federal court lacks subject-matter jurisdiction . . . may be

raised by a party, or by a court on its own initiative, at any stage in the litigation, even

after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

    Furthermore, "[i]t is elementary that [t]he United States, as sovereign, is immune

from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any

court define that court's jurisdiction to entertain the suit."  *United States v. Mitchell*, 445

U.S. 535, 538 (1980) (cleaned up).  A waiver of sovereign immunity must be

unequivocally expressed, not merely implied.  *Id*.  As the United States Supreme Court

stated in *Ruckelshaus v. Sierra Club*:

> Waivers of immunity must be "construed strictly in favor
> of the sovereign," *McMahon v. United States*, 342 U.S. 25,
> 27, 72 S.Ct. 17, 19, 96 L.Ed. 268 (1951), and not
> "enlarge[d] . . . beyond what the language requires."
> *Eastern Transp. Co. v. United States*, 272 U.S. 675, 686, 47
> S.Ct. 289, 291, 71 L.Ed. 472 (1927).

463 U.S. 680, 685 (1993).

    The precise expression of consent to a suit are the jurisdictional statutes enacted

by Congress which authorize suit against the United States only under certain conditions.

13

In customs and trade litigation, subject-matter jurisdiction in actions against the United

States is conferred upon this Court by 28 U.S.C. § 1581.  Thus, although the United

States has consented to be sued in this Court, such suits may only be permitted if the

conditions of that statute are met.

### B.  Standard Of Review For Motion To Dismiss Pursuant To USCIT R. 12(b)(6)

When the Court considers a motion to dismiss for failure to state a claim upon

which relief can be granted pursuant to USCIT R. 12(b)(6), the allegations in the

complaint must be accepted as true and should be construed favorably for the plaintiff.

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S.

672, 678 (2009).

Although plaintiff need not plead detailed facts, the complaint "must contain

sufficient factual material to 'state a claim to relief that is plausible on its face.'"  *Husteel*

*Co., Ltd. v. United States*, 375 F. Supp. 3d 1317, 1321 (Ct. Int'l Trade 2019) (quoting

*Twombly*, 550 U.S. at 570).  "A pleading that offers 'labels and conclusions' or 'a

formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft*, 556 U.S.

at 678 (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders

'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 555

U.S. at 557)*; see also Rack Room Shoes v. United States*, 718 F.3d 1370, 1376 (Fed. Cir.

2013) (same).

If allegations do not plausibly entitle a plaintiff to relief, even if true, dismissal of

the complaint is appropriate under USCIT R. 12(b)(6).  *See Twombly*, 550 U.S. at 558.

Additionally, "allegations in a complaint must rest on a plausible legal theory to survive a

motion to dismiss for failure to state a claim."  *Hutchison Quality Furniture, Inc. v.*

14

*United States*, 827 F.3d 1355, 1363 n. 4 (Fed. Cir. 2016) (citing *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425-26 (2014)).  Although courts will primarily consider the allegations in a complaint when considering a motion to dismiss for failure to state a claim, courts may also consider "facts . . . in documents appended to the complaint or incorporated in the complaint by reference, and to matters for which judicial notice may be taken."  *See Wuxi Seamless Oil Pipe Co., Ltd. v. United States*, 780 F. Supp. 2d 1337, 1339 (Ct. Int'l Trade 2011) (cleaned up).

## II.      THE COURT LACKS SUBJECT-MATTER JURISDICTION

Plaintiff asserts jurisdiction under 28 U.S.C. §§ 1581(a) and (i).  First Am. Compl. at ¶¶ 10-12.  Starting with 28 U.S.C. § 1581(a), this statute grants the Court exclusive jurisdiction "of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930."  The types of CBP decisions that are protestable are enumerated in 19 U.S.C. § 1514(a), and they include:

1. the appraised value of merchandise;

2. the classification and rate and amount of duties chargeable;

3. all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;

4. the exclusion of merchandise from entry or delivery or a demand for redelivery to customs custody under any provision of the customs laws, except a determination appealable under [19 U.S.C. § 1337];

5. the liquidation or reliquidation of an entry, or reconciliation as to the issues contained therein, or any modification thereof, including the liquidation of an entry, pursuant to either [19 U.S.C. § 1500] or [19 U.S.C. § 1504];

6. the refusal to pay a claim for drawback; or

7. the refusal to reliquidate an entry under subsection (d) of [19 U.S.C. § 1520].

Unless a protest is filed within the required time limits, these decisions become final and conclusive.  19 U.S.C. § 1514(a).

Under 28 U.S.C. § 1581(i), the Court possesses jurisdiction to hear "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for - (1) revenue from imports or tonnage; (2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue . . .; (3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or (4) administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section."

For the reasons explained below, the Court lacks subject-matter jurisdiction to consider plaintiff's claims pursuant to either 28 U.S.C. §§ 1581(a) or (i).

### A.  The Court Lacks Subject-Matter Jurisdiction Under 28 U.S.C. § 1581(a)

The Court of International Trade, like all Federal courts established under Article III of the U.S. Constitution, is a court of limited jurisdiction.  *DaimlerChrysler Corp. v. United States*, 442 F.3d 1313, 1318 (Fed. Cir. 2006).  The Court is presumed to lack jurisdiction unless an affirmative basis for jurisdiction can be demonstrated.  *Id.*  When an action is brought under 28 U.S.C. § 1581(a), jurisdiction is predicated upon a denied protest of a CBP decision pursuant to 19 U.S.C. §§ 1514, 1515.  *Id.* at 1314-15 (detailing statutory and regulatory framework for filing protests and appealing denied protests).  If CBP denies a protest pursuant to 19 U.S.C. § 1515, an importer can challenge the denial pursuant to 19 U.S.C. § 1514(a) and 28 U.S.C. § 1581(a).  *Id.* at 1319.

16

### i. Plaintiff Failed To Identify In Its Summons
### The Protests It Seeks To Challenge

A civil action contesting the denial of a protest "shall be commenced by filing . . .

a summons," *see* 28 U.S.C. § 2632(b), and the Court of Appeals for the Federal Circuit

has held that "the summons must establish the court's jurisdiction." *DaimlerChrysler*,

442 F.3d at 1318.  For cases brought pursuant to 28 U.S.C. § 1581(a), jurisdiction

"attaches only to protests identified on the summons." *Otter Prod., LLC v. United States*,

532 F. Supp. 3d 1345, 1350 (Ct. Int'l Trade 2021) (citing *DaimlerChrysler*, 442 F.3d at

1319).  Indeed, an essential purpose of the summons is to "put the government on notice

of what protest decisions are being contested in [this Court]." *DaimlerChrysler*, 442 F.3d

at 1320; *see also VWP of Am., Inc. v. United States*, 30 C.I.T. 1580, 1584 (2006) ("the

inquiry for purposes of subject matter jurisdiction is whether the summons constituted

fair notice to the government.").  A summons only provides notice if it identifies a protest

with particularity.  *DaimlerChrysler*, 442 F.3d at 1321 ("Because the importer may omit

particular protests in a summons in order to preserve the right to relitigate the issue, the

government has no reason to assume that all related protests are intended to be included

in a given suit").  The Federal Circuit has further clarified that "the notice function of the

summons is similar to that of a complaint in federal district court."  *Id.* at 1320 ("Just as a

complaint must 'give the defendant fair notice of what the plaintiff's claim is and the

grounds upon which it rests,' the summons must give the government fair notice of the

importer's 'claim [ ] and the grounds upon which it rests.'") (quoting *Conley v. Gibson,*

355 U.S. 41, 47-48 (1957)) (citations omitted).

In sum, "[t]he essential jurisdictional fact [in a section 1581(a) case]—the denial

of the protest— simply cannot be affirmatively alleged without specifically identifying

17

each protest involved in the suit." *DaimlerChrysler*, 442 F.3d at 1319. "Neither general statements of the subject matter of the protests nor listing of the total number of protests at issue in the suit is sufficient." *Id.* (quoting *Shulthis v. McDougal*, 225 U.S. 561, 569 (1912) ("It is not enough that grounds of jurisdiction ... may be inferred argumentatively from the statements in the [initial pleading], for jurisdiction cannot rest on any ground that is not affirmatively and distinctly set forth.")) (additional citations omitted). Accordingly, a summons is jurisdictionally defective if it does not identify the relevant protest(s) with particularly.

Finally, the Court differentiates between the failure to list individual entries in a summons, which does not deprive the Court of jurisdiction over those entries, and the failure to list protest numbers in a summons, which constitutes a jurisdictional defect. *See DaimlerChrysler*, 442 F.3d at 1317 (discussing *Pollak Import–Export Corp. v. United States,* 52 F.3d 303, 306 (Fed. Cir. 1995)); *see also VWP of Am.*, 30 C.I.T. at 1584 ("Each protest need only be 'sufficiently' identified in the summons, and the failure to list individual entries on the summons is not a jurisdictional defect depriving this court of jurisdiction over those entries").

Here, plaintiff's summons failed to identify any protests, rendering its jurisdictional allegations under 28 U.S.C. § 1581(a) inadequate. *See* Summons, ECF No. 1. Indeed, plaintiff filed a Form 4 summons, rather than the Form 1 summons designated for section 1581(a) cases. Plaintiff's Form 4 summons lists no protests or entries, nor does it identify section 1581(a) as a jurisdictional basis for any of its claims.

A question arose in *DaimlerChrysler* as to whether the Court could consider other contemporaneously-filed documents to discern the correct protest number for the protest

that was misidentified in the summons.  The Court avoided deciding this question.

*DaimlerChrysler*, 442 F.3d at 1320 ("We need not decide here whether, if a protest is

misidentified in the summons, the court may look to other contemporaneously filed

documents to determine the correct protest number.  Here there is no claim that the

protest numbers appeared in other documents filed with the summons.").  This open

question does not alter the outcome of this case.

First, *DaimlerChrysler* discussed the scenario in which the summons identified

the relevant protests, but listed an incorrect protest number, and the Court questioned

whether other contemporaneously-filed documents could be consulted to clarify this

confusion.  That set of circumstances is very different than the one before the Court in

this case, where plaintiff failed to list any protest numbers in the summons.  The relevant

statutes and case law show that the Court's jurisdiction attaches only to protests identified

in the summons, not contemporaneously-filed documents.  *See Shulthis*, 225 U.S. at 569

("jurisdiction cannot rest on any ground that is not affirmatively and distinctly set forth");

*DaimlerChrysler*, 442 F.3d at 1318 ("the summons must establish the court's

jurisdiction."); *Otter Prod.,* 532 F. Supp. at 1350 ("jurisdiction under 28 U.S.C. §

1581(a) attaches only to protests identified on the summons.").

Second, even if the Court reviews plaintiff's contemporaneously-filed documents,

they do not save its claims.  Although plaintiff identified protest numbers in a

contemporaneously-filed document, *i.e.*, an exhibit to the complaint, *see* ECF No. 2 at

Ex. 1, this document did not explicitly state which protests it challenges pursuant to 28

U.S.C. § 1581(a).  As explained above, the column titled "Liquidation/ Protest" states

"(x=1581(i) only)," and some entries contain an "x" in the column titled "Date Denied."

Even if it this "x" demonstrates the entries over which plaintiff only asserts section 1581(i) jurisdiction, the exhibit still does not state that plaintiff asserts 1581(a) jurisdiction over all of the other listed entries.

In fact, plaintiff's second motion to amend states that it is submitting a revised exhibit to its complaint to provides a "clearer listing of the entries in the case and Plaintiff's claims with respect to those entries," *see* ECF No. 14 at 48, further demonstrating that the summons did not "put the government on notice of what protest decisions are being contested." *DaimlerChrysler*, 442 F.3d at 1320. Likewise, the Office of the Clerk of the Court requested that a Form 1 Summons be filed "so that the relevant entries and protests may be obtained from the port." Second motion to amend at 8.

Although plaintiff included an exhibit with its second motion to amend that specifies the entries over which it claims section 1581(a) jurisdiction, *see* second motion to amend at 59, it filed this document too late. As we explain in more detail in the next section, an amended complaint filed more than 180 days after a protest denial cannot cure a jurisdictionally deficient summons. *DaimlerChrysler*, 442 F.3d at 1316, 1320, 1322 ("the summons must establish the court's jurisdiction," and a motion to amend "filed more than 180 days after denial of the omitted protests" is "time-barred").

For all of these reasons, the Court lacks subject-matter jurisdiction under 28 U.S.C. § 1581(a).

### ii. Plaintiff Cannot Amend Its Summons Because Its Request To Further Identify The Pertinent Protests Is Time-Barred

Under 28 U.S.C. § 2632(b), an action in the Court of International Trade contesting the denial of a protest "shall be commenced by filing ... a summons," and under 28 U.S.C. § 2636(a), the action must be commenced within 180 days of a protest

denial.  The Federal Circuit has interpreted sections 2632(b) and 2636(a) as imposing only two jurisdictional requirements: "'that a suit be instituted by filing a summons and that the suit be filed within 180 days after the denial of a protest.'"  *DaimlerChrysler*, 442 F.3d at 1317 (quoting *Pollak,* 52 F.3d at 306).  Moreover, "[b]ecause § 2636(a)(1) operates as a waiver of sovereign immunity, this court must 'strictly construe [this statute] in favor of the sovereign.'"  *Id.* at 1317 (citing *Autoalliance Int'l, Inc. v. United States,* 357 F.3d 1290, 1293 (Fed. Cir. 2004)).

Because the 180-day time limit set forth in 28 U.S.C. § 2636(a) is jurisdictional, a plaintiff cannot amend its summons to add time-barred protests once this period has elapsed.  In *DaimlerChrysler*, for example, the importer filed a summons within 180 days of its protest denial, but then after the 180-day period had elapsed, moved to amend its summons to add seven omitted protests.  In ruling against the importer, the Federal Circuit explained that "[t]he question of whether the seven omitted protests were time-barred and thus outside the Court of International Trade's jurisdiction turns on the sufficiency of the summons as to those protests."  *DaimlerChrysler*, 442 F.3d at 1316.  Because the summons failed to identify the omitted protests, the trial court "correctly denied [the importer's] motion to amend the summons on the ground that the omitted protests were time-barred and thus beyond the court's jurisdiction."  *Id.* at 1322; *see also Otter Prod.*, 532 F. Supp. 3d at 1351, fn 9 (no jurisdiction over entries listed in a prior disclosure because it was "undisputed that [plaintiff's] Summons did not include any protest related to the entries at issue in the Prior Disclosure."); *see also Otter Prod., LLC v. United States*, 70 F. Supp. 3d 1281, 1297, fn. 10 (Ct. Int'l Trade 2015), *aff'd.* 834 F.3d

21

1369 (Fed. Cir. 2016) (no jurisdiction over reconciliation entries not covered by the protest listed on the summons).

Here, plaintiff's summons did not list any protests. *See* ECF No. 1. Moreover, plaintiff first moved to amend the summons to identify the protests it now seeks to challenge on May 10, 2022, more than 180 days after the protests were denied. *See* First motion to amend at 8 (listing Protest Nos. 4601-21-127895, 4601-21-127966, 4601-21-128225 and 4601-21-128666, which were denied on Oct. 19, 2021); *see also* CBP Decl. at ¶ 10. The request to further identify the pertinent protests is time-barred and consequently, the protests are "beyond the court's jurisdiction."[7] *DaimlerChrysler*, 442 F.3d at 1322 (a summons that failed to identify the pertinent protests was "insufficient to 'commence an action' in the Court of International Trade," and the Court "correctly denied [the importer's] motion to amend the summons on the ground that the omitted protests were time-barred and thus beyond the court's jurisdiction.").

For all of these reasons, the Court should deny plaintiff's motion to amend its summons.

### B. The Court Lacks Subject-Matter Jurisdiction Under 28 U.S.C. § 1581(i)

It is well-settled that 28 U.S.C. § 1581(i) "embodies a residual grant of jurisdiction [that] may not be invoked when jurisdiction under another subsection of §

---

[7] Plaintiff notes that pursuant to USCIT Rule 3(e), the Court "may allow a summons to be amended at any time on such terms as it deems just, unless it clearly appears that material prejudice would result to the substantial rights of the party against whom the amendment is allowed." Second motion to amend at 23. This rule, however, does not cure the jurisdictional defects in plaintiff's summons, nor does it expand the Court's jurisdiction to the time-barred protests that plaintiff seeks to add to its amended summons. *DaimlerChrysler*, 442 F.3d at 1322.

1581 is or could have been available, unless the remedy provided under that other
subsection would be manifestly inadequate." *Sunpreme Inc. v. United States*, 892 F.3d
1186, 1191 (Fed. Cir. 2018) (*Sunpreme I*) (cleaned up); *see also Chemsol, LLC v. United
States*, 755 F.3d 1345, 1354 (Fed. Cir. 2014) ("[W]hen relief is prospectively and
realistically available under another subsection of 1581, invocation of subsection (i) is
incorrect.") (citations omitted); *Erwin Hymer Grp. N. Am., Inc. v. United States*, 930 F.3d
1370, 1374 (Fed. Cir. 2019) ("an overly broad interpretation of § 1581(i) would
otherwise threaten to swallow the specific grants of jurisdiction contained within the
other subsections.") (cleaned up).

The Federal Circuit's "unambiguous precedents. . . make clear that [section
1581(i)'s] scope is strictly limited," and that statutory procedures "cannot be easily
circumvented." *Int'l Custom Prods., Inc. v. United States*, 467 F.3d 1324, 1327 (Fed.
Cir. 2006) (cleaned up).  Thus, "where a litigant has access to [the trial court] under
traditional means, such as 28 U.S.C. § 1581(a), it must avail itself of this avenue of
approach complying with all the relevant prerequisites thereto." *American Air Parcel
Forwarding Co., Ltd. v. United States*, 718 F.2d 1546, 1549 (Fed. Cir. 1983) (citation
omitted).   As the Federal Circuit explained in *American Air Parcel*:

> "[T]he legislative history of the Customs Courts Act of
> 1980 demonstrates that Congress did not intend the Court
> of International Trade to have jurisdiction over appeals
> concerning completed transactions when the appellant **had
> failed to utilize an avenue for effective protest** before the
> Customs Service."

*Id.* (quoting *United States v. Uniroyal, Inc*., 687 F.2d 467, 471 (C.C.P.A. 1982))
(emphasis added).

To establish that jurisdiction under another subsection of 1581 would be

23

"manifestly inadequate," a party must demonstrate that the remedy provided by that subsection is "an 'exercise in futility, or incapable of producing any result; failing utterly of the desired end through intrinsic defect; useless, ineffectual, vain.'"  *Sunpreme I*, 892 F.3d at 1193-94 (quoting *Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289, 1294 (Fed. Cir. 2008)); *see also Nat'l Nail Corp. v. United States*, 335 F. Supp. 3d 1321, 1327 (Ct. Int'l Trade 2018) (same).

As relevant to this motion, failure to timely file a protest contesting the liquidation of an entry, or failure to timely initiate an action in this Court challenging a denied protest, does not render the remedy available under CBP's administrative protest scheme "manifestly inadequate."  *See ARP Materials*, 520 F. Supp. 3d at 1361 ([i]t is axiomatic that a party's failure to timely invoke a remedy does not make it inadequate"); *see also Juice Farms, Inc. v. United States*, 68 F.3d 1344, 1346 (Fed. Cir. 1995) (same); *Carbon Activated Corp. v. United States*, 6 F. Supp. 3d 1378, 1380 (Ct. Int'l Trade 2014), *aff'd*, 791 F.3d 1312 (Fed. Cir. 2015) (same).

The Court lacks jurisdiction under section 1581(i) because plaintiff had an adequate remedy under section 1581(a), which grants the Court exclusive jurisdiction over "any civil action commenced to contest the denial of a protest, in whole or in part under section 515 of the Tariff Act of 1930."

### i.   This Case Involves A Protestable Decisions By CBP That Falls Within The Scope of 19 U.S.C. § 1514(a)

The Federal Circuit has held that, in some circumstances, an importer may protest certain decisions by CBP in applying another agency's determination.  *See*, *e.g.*, *Xerox*

*Corp. v. United States*, 289 F.3d 792, 795 (Fed. Cir. 2002), *overruled on other grounds*[8]

*by Sunpreme Inc. v. United States*, 946 F.3d 1300 (Fed. Cir. 2020) (claimed

"misapplication of the [Commerce] order by Customs is properly the subject of a protest

under 19 U.S.C. § 1514(a)(2)").  In *Xerox*, the Court explained CBP's statutory

obligations in processing entries.  *Id.* at 794 (discussing 19 U.S.C. § 1500(c)).  By law,

CBP is required to "fix the final amount of duty to be paid on such merchandise and

determine any increased or additional duties, taxes, and fees due or any excess of duties,

taxes, and fees deposited."  19 U.S.C. § 1500(c).  CBP is also required to "liquidate"

entries, which is defined as "the final computation or ascertainment of duties on entries

for consumption or drawback entries."  *Id.* at § 1500(d); 19 C.F.R. § 159.1 (2020).

In *Xerox*, the Court discussed these obligations in the context of CBP applying

orders of the Department of Commerce (Commerce) in the antidumping and

countervailing duty (AD/CVD) context.  *Xerox*, 289 F.3d at 794.  In applying these

orders, CBP makes "factual findings to ascertain what the merchandise is, and whether it

is described in an order."  *Id.*  Correcting errors in the process of applying Commerce's

orders to specific entries, the Court held, was "not the province of Commerce," but

"properly the subject of a protest under 19 U.S.C. § 1514(a)(2)."  *Id.* at 795.[9]

_____

[8] *Xerox* was only overruled by the Court in *Sunpreme* "to the extent any portions . . . could be read as contrary" to the holding in *Sunpreme*, which involved CBP's authority to suspend liquidation of goods that it determined to fall within the scope of an ambiguous AD/CVD order.  *Sunpreme*, 946 F.3d at 1321.  The Court stated this merely "[i]n the interest of clarity," while also noting that "[u]nder a proper reading," *Xerox* was not contrary to its holding in *Sunpreme*.  *Id.*  Nothing in *Sunpreme* overturns the holding in *Xerox* that the claimed "misapplication" by CBP of another agency's determination involves a protestable decision.

[9] The facts of this case are distinguishable from those circumstances in which CBP acts in such a way that its actions are non-reviewable under the protest scheme.  *See*, *e.g.*,

Of particular relevance here, this Court has held that CBP's classification determinations made in the context of enforcing the USTR's retroactive exclusions of Section 301 duties "were necessarily protestable 'decisions' because the agency had to '[f]irst, ascertain[ ] the meaning of specific terms in the [HTSUS] provision[,] and second, determin[e] whether the goods come within the description of those terms.'" *ARP Materials,* 520 F. Supp. 3d at 1360–61 (quoting *StoreWALL, LLC v. United States*, 644 F.3d 1358, 1361–62 (Fed. Cir. 2011)).  The Court explained that:

> Customs here performed more than a passive or ministerial function; in classifying Plaintiffs' entries under HTSUS subheadings subject to Section 301 duties, it made substantive legal (interpreting the HTSUS subheadings) and factual (determining whether the entries fell within those subheadings) determinations that it had the authority to make. These determinations required Customs to exercise "genuine interpretive or comparable judgments." *Thyssenkrupp*, 886 F.3d at 1225. Accordingly, this case "presents exactly the scenario in which § 1514's protest provisions can be invoked because Customs engaged in some sort of decision-making process." *Chemsol, LLC v. United States*, 755 F.3d 1345, 1351 (Fed. Cir. 2014) (cleaned up).

*Id.*

Indeed, the CBP decision at issue consisted of liquidating plaintiff's entries without applying the claimed exclusion.[10]  Determining the tariff classification and duty rate applicable to these entries at liquidation was solely the province of CBP, and the

---

*Thyssenkrupp Steel N. Am., Inc. v. United States*, 886 F.3d 1215, 1224-25 (Fed. Cir. 2018).  In this circumstance, CBP was acting in its traditional role as the liquidator of plaintiff's entries, which is protestable.

[10] All of plaintiff's entries liquidated after the USTR granted the claimed exclusion.  *See October 2019 Notice of Product Exclusions* (dated Oct. 2, 2019) and first amended complaint at Ex. 1 (entries liquidated on or after September 4, 2020); *see also* CBP Decl. at ¶ 6.

agency's decisions are therefore "properly the subject of a protest under 19 U.S.C. § 1514(a)(2)." *Xerox*, 289 F.3d at 795; *see also* 19 U.S.C. § 1514(a)(2) (providing for protest of "the classification and rate and amount of duties chargeable" that CBP applied at liquidation).[11]

Moreover, in assessing the relevant jurisdictional basis, the Court must "look to the true nature of the action." *Sunpreme I*, 892 F.3d at 1193 (citation omitted); *see also Hutchison*, 827 F.3d at 1360-61 (true nature of action was a protestable decision "committed solely to [CBP]," where an importer purported to challenge Commerce's liquidation instructions, but only alleged an error involving CBP's decision as to the "appropriate time for liquidation.").

Here, the true nature of the case is the liquidation of plaintiff's entries without the benefit of the USTR's product exclusion. As the Court held in *ARP Materials*, an importer challenges "Customs' classification decisions" when it seeks to enforce the USTR's retroactive exclusions of Section 301 duties. *ARP Materials*, 520 F. Supp. at

---

[11] Numerous other cases have held that CBP may make protestable decisions in the process of implementing another agency's instructions or orders. *See, e.g.*, *Belgium v. United States*, 551 F.3d 1339, 1347 (Fed. Cir. 2009) ("If the liquidation order [from Commerce] is clear, but is being improperly applied by Customs, then Custom's actions can be challenged under 28 U.S.C. § 1581(a)") (citing *Xerox*, 289 F.3d at 795); *see also Cemex, S.A. v. United States*, 384 F.3d 1314, 1324 (Fed. Cir. 2004), *as amended on denial of reh'g and reh'g en banc* (Dec. 14, 2004) (distinguishing CBP's "role in making *antidumping decisions, i.e.,* in calculating antidumping duties, [which] is generally ministerial," from "a decision regarding *liquidation*," which falls within the meaning of 19 U.S.C. § 1514(a)) (emphasis in original); *TR International Trading Co. v. United States,* 433 F. Supp. 3d 1329, 1341 (Ct. Int'l Trade 2020) (CBP's "factual or procedural errors" with respect to implementing an AD/CDV order are protestable). In such cases, the *"*purpose of the protest mechanism [is] to allow agency consideration of issues after an initial liquidation determination," including "bring[ing] the agency's final duty calculation into line with a change of applicable law if one has occurred." *Thyssenkrupp*, 886 F.3d at 1224.

1360.  Indeed, plaintiff does not allege any error by the USTR in issuing the Section 301

duties, or in granting the relevant product exclusion.  Rather, plaintiff merely challenges

CBP's decision not to apply its claimed product exclusion when liquidating its entries.

Plaintiff in effect seeks a re-classification of its imported merchandise from an

HTSUS provision that covers merchandise subject to Section 301 duties (heading

9903.88.02) to a heading that covers merchandise subject to a product exclusion (heading

9903.88.20).  Only CBP can change the liquidated tariff classification of particular

imported merchandise from one HTSUS heading to another, which requires CBP to

determine the proper heading for a specific entry.  In administering refunds of Section

301 duties, determining the proper tariff heading involves a factual determination by CBP

as to whether particular merchandise meets the requirements of a claimed exclusion, and

whether an importer has submitted sufficient proof of its claim.

While plaintiff purports to challenge "the authority of the USTR *and* CBP" in

making a protest a "prerequisite" to claiming retroactive refunds of Section 301 duties,

*see* First Am. Compl. at ¶ 2 (emphasis added), once again, only CBP determines whether

to apply a product exclusion upon liquidating a specific entry, only CBP decisions can be

protested pursuant to 19 U.S.C. § 1514(a)(2), and only CBP can deny a protest.  In short,

CBP—not the USTR—enforces product exclusions and issues retroactive refunds of

Section 301 duties.

In sum, the true nature of plaintiff's claims does not involve any action or

decision by the USTR with respect to the so-called Protest Statute.  Rather, the alleged

harm occurred as a result of CBP liquidating plaintiff's entries without applying

plaintiff's claimed exclusion, which involved factual determinations that are protestable

pursuant to 19 U.S.C. § 1514(a)(2) and the relevant case law.  In addition, as discussed more below, the relief plaintiff seeks (that is, reclassification of its merchandise under an HTSUS heading that covers merchandise subject to a product exclusion) could only be obtained by filing a protest with CBP.

### ii. Section 1581(a) Provided Plaintiff With A Remedy That Was Not Manifestly Inadequate

For the liquidations that plaintiff timely protested, it could have initiated an action pursuant to section 1581(a) but did not.  For the liquidations that plaintiff did not timely protest, it could have first filed a timely protest, and then challenged any protest denials pursuant to section 1581(a).  Therefore, plaintiff's remedy under section 1581(a) forecloses jurisdiction under section 1581(i), unless that remedy was "manifestly inadequate." *Sunpreme I*, 892 F.3d at 1191 (Fed. Cir. 2018).  This is a high bar.  Only remedies "incapable of producing any result" or "failing utterly of the desired end" are manifestly inadequate. *Id.* at 1193- 94.  For the reasons explained below, plaintiff's remedy under section 1581(a) was not manifestly inadequate.

As an initial matter, any importer that believed its merchandise should be excluded from Section 301 duties could file an exclusion request with the USTR.  Once filed, importers had an obligation to monitor their requests and take appropriate measures to preserve their rights to any possible refunds, and to make sure that decisions issued by the USTR could be properly applied by CBP.  Indeed, the USTR's FAQs provided multiple public resources for tracking exclusion requests online.  The 301 Webpage also made clear that in addition to their own requests, importers had an obligation to monitor requests filed by other interested persons. *See* List 2 FAQs at 4 ("[a]n exclusion, if

granted, will apply to the particular product covered by the exclusion, and will not be tied to particular producers or exporters.").

In addition, the USTR's Federal Register notices announcing the List 2 trade action, as well as the notices announcing plaintiff's claimed exclusion, directed importers to CBP for guidance on recovering any refunds of Section 301 duties. *See October 2019 Notice of Product Exclusions*, 84 Fed. Reg. at 52,554; *see also* the 301 Webpage's link to "CBP Resources." CBP's guidance, in turn, clearly instructed importers to file a protest if their entries liquidated prior to requesting a refund of Section 301 duties, or while an exclusion request was pending. *See* CSMS #40208881 and #19-000260.

As a result, plaintiff had adequate notice of all the information needed to recover any refund of Section 301 duties. Moreover, all of plaintiff's entries liquidated after the USTR granted its claimed product exclusion. *See October 2019 Notice of Product Exclusions* (dated October 2, 2019); *see also* First Am. Compl. at Ex. 1 (entries liquidated on or after September 4, 2020); *see also* CBP Decl. at ¶ 6. Thus, plaintiff had the entire 180-day protest period in which to request a refund of Section 301 duties based on the published exclusion. Furthermore, plaintiff had clear guidance from the USTR and CBP that it could file a protest to request a refund of Section 301 duties.

Starting with the entries for which plaintiff filed timely protests, section 1581(a) undoubtedly provided a remedy that was not manifestly inadequate. Had plaintiff challenged these protest denials within 180 days, the Court would have had jurisdiction to review its claims in accordance with 28 U.S.C. § 2632(b) and 28 U.S.C. § 1581(a). However, as explained in Section II(A)(i), plaintiff did not identify the relevant protests in the summons, and it therefore did not initiate an action pursuant to section 1581(a).

*DaimlerChrysler*, 442 F.3d at 1322; *Otter Prod.*, 532 F. Supp. 3d at 1351, fn 9; *Otter Prod.*, 70 F. Supp. 3d at 1297, fn. 10.  Moreover, as explained in Section II(A)(ii), because CBP denied these protests more than 180 days before plaintiff first moved to amend its summons and identify the relevant protests, they are time-barred. *DaimlerChrysler*, 442 F.3d at 1322.  Importantly, the failure to timely initiate an action under section 1581(a) does not render this provision manifestly inadequate.  *See ARP Materials*, 520 F. Supp. 3d at 1361 ([i]t is axiomatic that a party's failure to timely invoke a remedy does not make it inadequate") (cleaned up).  Thus, plaintiff had a remedy under 1581(a) that was not manifestly inadequate, and jurisdiction under section 1581(i) is therefore precluded.

Section 1581(a) also provided a remedy that was not manifestly inadequate with respect to those protest denials that plaintiff did not timely protest (or did not protest at all).  Indeed, plaintiff cannot claim to be unaware of the information needed to file timely protests in order claim the benefit of retroactive exclusions of Section 301 duties.  *August 2018 Notice of Action*, 83 Fed. Reg. at 40,823; *List 2 Exclusion Procedures*, 83 Fed. Reg. at 47,236; List 2 FAQs; CSMS #40208881 and #19-000260.  The Federal Circuit has held that when importers miss the protest period due to their own lack of diligence, they forego the opportunity to invoke this remedy.  In *Juice Farms, Inc. v. United States*, 68 F.3d 1344, 1346 (Fed. Cir. 1995), for example, an importer did not learn that CBP had erroneously liquidated its entries until after the protest period had passed.  The Court held, however, that CBP had posted bulletin notices of the liquidations that "suppl[ied] sufficient notice and thus trigger[ed] the . . . period for protests."  *Id.*  In so doing, the Court explained that "the importer, bears the burden to check for posted notices of

liquidation and to protest timely," and it "cannot circumvent the timely protest requirement by claiming that its own lack of diligence requires equitable relief under 28 U.S.C. § 1581(i)." *Id.* (citation omitted).

Like the plaintiff in *Juice Farms*, plaintiff had an obligation to monitor all relevant public information. This information—including the filing and granting of exclusion requests, as well as CBP's entry information and guidance—would have informed plaintiff of how to preserve any rights it had to recover Section 301 duties. As the Court held in *ARP Materials*, this information provided "adequate notice of the procedures . . . to follow to correct Customs' erroneous classification decisions." *ARP Materials*, 520 F. Supp. at 1362. However, for those entries that plaintiff did not timely protest, it "regrettably dropped the ball," and its failure to do so does not give this Court jurisdiction under section 1581(i). *Id.* (citing *Degussa Canada Ltd. v. U.S.*, 87 F.3d 1301, 1304 (Fed. Cir. 1996) ("Degussa's unfortunate situation of having paid a duty that, it subsequently turned out, it should not have paid, is of its own making. Degussa could have avoided the problem if it had filed a timely protest to the ... classification [of its entry].")).

Importantly, plaintiff utilized the procedures set forth by CBP to successfully obtain retroactive refunds of Section 301 duties. Specifically, Entry No. 94D-15334070 was refunded after plaintiff filed a post summary correction on September 17, 2020, and Entry No. 94D-15334427 was refunded after plaintiff filed a post summary correction on September 17, 2020. The first amended complaint omits these two entries because "refunds have already been issued." Second motion to amend at 2; *see also* CBP Decl. at ¶ 14. Had plaintiff not filed post-summary corrections, it could have obtained refunds by

filing timely protests.  CSMS #40208881 and #19-000260.  In that circumstance, timely protests would have provided plaintiff with "opportunities for picking low-hanging fruit," as the Court in *ARP Materials* described the process of filing timely protests to obtain refunds of Section 301 duties.  520 F. Supp. 3d at 1361 (citing *Carbon Activated Corp.*, 6 F. Supp. 3d at 1380).  The fact that some of plaintiff's protests were denied does not change this conclusion.  Indeed, these protests were denied due to "insufficient documentation to support claim," *see* CBP Decl. at ¶ 10, not because the protest mechanism itself was inadequate.

In sum, plaintiff cannot circumvent the statutory requirements for initiating timely section 1581(a) actions, or for filing timely protests, by bringing an action under section 1581(i).  To hold otherwise would be in clear contravention of case law limiting the scope of section 1581(i)'s residual jurisdiction.  For the reasons discussed above, the Court should dismiss this case for lack of subject-matter jurisdiction.

III.     **PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

Alternatively, this case should be dismissed because plaintiff fails to state a claim upon which relief can be granted.  Instead, the first amended complaint relies on conclusory allegations regarding the Government's alleged wrongdoing, and it is almost completely devoid of factual allegations regarding plaintiff's right to recover retroactive refunds of Section 301 duties.

As we discussed at the outset of this motion, although plaintiff need not plead detailed facts, the complaint "must contain sufficient factual material to 'state a claim to relief that is plausible on its face.'"  *Husteel Co., Ltd.*, 375 F. Supp. 3d at 1321 (quoting *Twombly*, 550 U.S. at 570).  "A pleading that offers 'labels and conclusions' or 'a

33

formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 555 U.S. at 557)*; see also Rack Room Shoes*, 718 F.3d at 1376 (same).

The crux of the first amended complaint appears to be the vague assertion that "[d]efendants exceeded their authority under the trade act and in all other ways" in requiring importers to file protests in order to claim retroactive refunds of Section 301 duties.  First Am. Compl. at ¶ 24.  Importantly, the first amended complaint contains no facts describing the merchandise at issue, identifying plaintiff's claimed exclusion, or explaining how its merchandise qualifies for this exclusion.  Nor does the first amended complaint demonstrate why CBP's denials of plaintiff's protests were erroneous.

Rather, plaintiff simply claims that the USTR and CBP's actions were "*ultra vires*."  First Am. Compl. at ¶ 7 (emphasis in original).  Without any facts demonstrating defendants' purported excess of authority, or plaintiff's entitlement to the retroactive refund of Section 301 duties, this statement constitutes a mere conclusion of law.  *Power Analytics Corp. v. Operation Tech., Inc.*, 820 F. App'x 1005, 1019 (Fed. Cir. 2020) (plaintiff failed to plead claim where allegations consisted of "conclusions, not facts.").  As a result, the first amended complaint cannot survive a motion to dismiss.  *See Twombly*, 550 U.S. at 570.

## **CONCLUSION**

For the foregoing reasons, this Court should deny plaintiff's motion to amend the

summons, grant the Government's motion to dismiss, and dismiss this action.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:     /s/ Justin R. Miller
         JUSTIN R. MILLER
         Attorney-In-Charge
         International Trade Field Office

         /s/ Jamie L. Shookman
         JAMIE L. SHOOKMAN
         Trial Attorney
         Department of Justice, Civil Division
         Commercial Litigation Branch
         26 Federal Plaza – Suite 346
         New York, New York 10278
         (212) 264-2107
         Attorneys for Defendant

Of Counsel:
Valerie Sorensen-Clark
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

July 15, 2022

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Jamie Shookman, an attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the Government's memorandum in support of defendants' opposition to plaintiff's motion to amend the summons and defendants' motion to dismiss, dated July 15, 2022, relying upon the word count feature of the word processing program used to prepare the memorandum, certify that this memorandum complies with the word count limitation under the Court's chambers procedures, and contains 9,918 words.

<u>/s/ Jamie L. Shookman</u>