UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | | |
|---|---|---|
| ENVIRONMENT ONE CORPORATION | : | |
| | : | |
| Plaintiff, | : | Court No.  22-00124 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA; | : | |
| OFFICE OF THE UNITED STATES TRADE | : | |
| REPRESENTATIVE; KATHERINE TAI, | : | |
| U.S. TRADE REPRESENTATIVE; | : | |
| U.S. CUSTOMS & BORDER PROTECTION; | : | |
| CHRIS MAGNUS, COMMISSIONER, | : | |
| U.S. CUSTOMS AND BORDER PROTECTION | : | |
| | : | |
| Defendants. | : | |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

Of Counsel:

Valerie Sorensen-Clark
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

October 25, 2022

JAMIE L. SHOOKMAN
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, New York 10278
(212) 264-2107
Attorneys for Defendants

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

I.   The Court Lacks Subject Matter Jurisdiction Over The Test Cases ................................. 4

  A.  The Court Lacks Subject Matter Jurisdiction under 28 U.S.C. 1581(a) ........................... 4

     i.  A Complaint Cannot Cure Jurisdictional Defects In The Summons ......................... 5

     ii.  The Factor Of Material Prejudice Is Not Applicable ................................................. 7

     iii.  *DaimlerChrysler* Supports Dismissing Plaintiff's Claims
         Under 28 U.S.C. 1581(a) ........................................................................................ 8

  B.  The Court Lacks Subject Matter Jurisdiction Under 28 U.S.C .1581(i) ......................... 12

     i.  There Is Clear Statutory Authority To Require The Filing Of Timely
        Protests To Refund Section 301 Duties ................................................................. 12

     ii.  Plaintiff Provides No Reason Why The Court Should Depart From
        The Holding By The Federal Circuit In *ARP Materials* ........................................ 13

II.   Plaintiff Failed To Plead A Claim Upon Which Relief Can Be Granted ....................... 17

  A.  Plaintiff Has Not Pled An APA Claim That Entitles It To Relief ................................... 18

  B.  Plaintiff Has Not Pled Any Constitutional Claims That Entitle It To Relief .................. 20

     i.  Plaintiff Has Not Pled A Claim Under The Legislative Vesting
        Clause That Entitles It To Relief ............................................................................ 20

     ii.  Plaintiff Has Not Pled A Due Process Clause That Entitles It To Relief ................. 24

CONCLUSION .............................................................................................................. 26

## TABLE OF AUTHORITIES

**Cases**

*A Classic Time v. United States,*
123 F.3d 1475 (Fed. Cir. 1997)..........................................................................................24, 25

*Alden Leeds Inc. v. United States,*
476 F. App'x 393 (Fed. Cir. 2012) ...........................................................................................17

*Al-Saadoon v. Barr,*
973 F.3d 794 (8th Cir. 2020) ............................................................................................17, 18

*Am. Mfrs. Mut. Ins. Co. v. Sullivan,*
526 U.S. 40 (1999)....................................................................................................................24

*ARP Materials, Inc. v. United States,*
47 F.4th 1370 (Fed. Cir. 2022) ........................................................................................*passim*

*Biden v. Missouri,*
142 S. Ct. 647 (2022)................................................................................................................23

*Cemex, S.A. v. United States,*
384 F.3d 1314 (Fed. Cir. 2004)............................................................................................12-13

*Chrysler Corp. v. Brown,*
441 U.S. 281 (1979)..................................................................................................................18

*Coleman v. Pension Benefit Guar. Corp.,*
94 F. Supp. 2d 18 (D.D.C. 2000) .......................................................................................14, 17

*DaimlerChysler Corp. v. United States,*
442 F.3d 1313 (Fed. Cir. 2006)........................................................................................*passim*

*Henthorn v. Dep't of Navy,*
29 F.3d 682 (D.C. Cir. 1994)....................................................................................................18

*Hutchison Quality Furniture, Inc. v. United States,*
827 F.3d 1355 (Fed. Cir. 2016).........................................................................................12, 13

*Int'l Custom Prod., Inc. v. United States,*
791 F.3d 1329 (Fed. Cir. 2015).................................................................................................24

*Juice Farms, Inc. v. United States,*
68 F.3d 1344 (Fed. Cir. 1995)...................................................................................................17

*LaChance v. Erickson,*
522 U.S. 262 (1998)..................................................................................................................24

*Massachusetts v. EPA,*
549 U.S. 497 (2007)....................................................................................26

*Millenium Lumber Distrib. Ltd. v. United States,*
558 F.3d 1326 (Fed. Cir. 2009)...................................................................12

*Nat'l Min. Ass'n v. McCarthy,*
758 F.3d 243 (2014)...............................................................................18, 19

*North American Foreign Trading Corp. v. United States,*
783 F.2d 1031 (Fed. Cir. 1986)...................................................................24

*Norwegian Nitrogen Products Co. v. United States,*
288 U.S. 294 (1933)....................................................................................24

*Otter Prod., LLC v. United States,*
532 F. Supp. 3d 1345 (Ct. Int'l Trade 2021) ........................................5, 6, 11

*Perez v. Mortg. Bankers Ass'n,*
575 U.S. 92 (2015)......................................................................................18

*Pollak Import-Export Corp. v. United States,*
52 F.3d 303 (Fed. Cir. 1995)....................................................................9, 10

*PSC VSMPO-Avisma Corp. v. United States,*
688 F.3d 751 (Fed. Cir. 2012)................................................................24, 25

*Royal Brush Mfg., Inc. v. United States,*
483 F.Supp.3d 1294 (Ct. Int'l Trade 2020) .........................................24, 25

*Shulthis v. McDougal,*
225 U.S. 561 (1912)......................................................................................6

*Statewide Bonding, Inc. v. United States Dep't of Homeland Sec.,*
980 F.3d 109 (D.C. Cir. 2020).....................................................................18

*Sunpreme Inc. v. United States,*
892 F.3d 1186 (Fed. Cir. 2018)....................................................................12

*U.S. Auto Parts Network, Inc. v. United States,*
319 F. Supp. 3d 1303 (Ct. Int'l Trade 2018) ..............................................24

*West Virginia v. EPA,*
142 S. Ct. 2587 (2022)..........................................................................*passim*

*Zenith Electronics Corp. v. United States,*
988 F.2d 1573 (Fed. Cir. 1993)...................................................7, 8, 9, 10, 11

**Statutes**

5 U.S.C. § 553(b) ................................................................................................ 18

5 U.S.C. § 706(2)(A) ........................................................................................... 18

5 U.S.C. § 706(2)(C) ........................................................................................... 18

19 U.S.C. § 1514 ............................................................................................. *passim*

19 U.S.C. § 1514(a) ........................................................................................ 12, 17

19 U.S.C. § 1514(a)(2) ........................................................................ 13, 14, 19, 22, 23

19 U.S.C. § 2171(f) ......................................................................................... 14, 15

28 U.S.C. § 1581(a) ........................................................................................ *passim*

28 U.S.C. § 1581(i) ......................................................................................... *passim*

28 U.S.C. § 1585 ............................................................................................ 16, 17

28 U.S.C. § 2632(b) .......................................................................................... 5, 11

**Rules**

Fed. Cir. R. 35(e)(1)(F) ......................................................................................... 16

Fed. Cir. R. 40(a)(5) ............................................................................................. 16

FRAP 35(a)(1) .................................................................................................... 16

FRAP 35(a)(2) .................................................................................................... 16

USCIT R. 3(d) ...................................................................................................... 7

USCIT R. 3(e) ...................................................................................................... 7

USCIT R. 12(b)(1) .......................................................................................... 1, 12, 17

USCIT R. 12(b)(6) ............................................................................................ 1, 17

USCIT R. 18 ..................................................................................................... 9, 11

USCIT Rule 56.3 .................................................................................................. 3

USCIT Rule 73.1 .................................................................................................. 8

**Other Authorities**

*Procedures To Consider Requests for Exclusion of Particular Products From the Additional Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47, 236 (USTR Sept. 18, 2018) ................................................................... 15, 19

*Notice of Product Exclusions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 52, 554 (USTR Oct. 2, 2019) ........................................................... 15, 19, 23, 25

U.S. Const., art. I, § 1 ............................................................................................................... 20

U.S. Const. amend. V ................................................................................................................ 20

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

_____

|                                                          |   |                        |
|----------------------------------------------------------|---|------------------------|
| ENVIRONMENT ONE CORPORATION                              | : |                        |
|                                                          | : |                        |
| Plaintiff,                                              | : | Court No.  22-00124    |
|                                                          | : |                        |
| v.                                                       | : |                        |
|                                                          | : |                        |
| UNITED STATES OF AMERICA;                               | : |                        |
| OFFICE OF THE UNITED STATES TRADE                       | : |                        |
| REPRESENTATIVE; KATHERINE TAI,                          | : |                        |
| U.S. TRADE REPRESENTATIVE;                              | : |                        |
| U.S. CUSTOMS & BORDER PROTECTION;                       | : |                        |
| CHRIS MAGNUS, COMMISSIONER,                             | : |                        |
| U.S. CUSTOMS AND BORDER PROTECTION                      | : |                        |
|                                                          | : |                        |
| Defendants.                                             | : |                        |
|                                                          | : |                        |

_____

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of International Trade (USCIT R.), defendants, the United States *et. al.*, respectfully submit this reply in further support of our motion to dismiss.  *See* ECF No. 19 (Def. Mot.).

## INTRODUCTION

This case involves plaintiff's challenge to the determination by U.S. Customs and Border Protection (CBP) not to apply an exclusion to duties imposed under section 301 of the Trade Act of 1974 (section 301) on certain entries of pressure switches.  Plaintiff also claims that the Office of the United States Trade Representative (USTR) and CBP unlawfully expanded 19 U.S.C. § 1514 by requiring importers to protest entries as a prerequisite to claiming exclusions from section 301 duties.

We moved to dismiss plaintiff's case for lack of subject-matter jurisdiction, and in the alternative, for failure to state a claim. *See* Def. Mot. at 1. Our motion also opposed a prior request by plaintiff to amend its summons to identify the protest numbers that it seeks to challenge under 28 U.S.C. § 1581(a). *Id.* at 17-22. Our motion explained that the Court lacks subject-matter jurisdiction pursuant to section 1581(a) because the summons was jurisdictionally defective, as it did not identify the protests plaintiff seeks to challenge, and plaintiff first moved to amend its summons to identify those protests after they were time-barred. *Id.* We also explained that the Court lacks subject-matter jurisdiction pursuant to 28 U.S.C. § 1581(i) because CBP's liquidation of plaintiff's entries without the benefit of its claimed exclusion was a protestable decision, and plaintiff could have sought judicial review of any protest denials under section 1581(a). *Id.* at 24-29. Because section 1581(i) is a residual grant of jurisdiction, the existence of a remedy under section 1581(a) that was not manifestly inadequate precludes jurisdiction under 1581(i). *Id.* at 29-33. Finally, we argued, in the alternative, that the Court should dismiss this action because plaintiff has failed to state a claim upon which relief may be granted. *Id.* at 33-34.

In its response, plaintiff moved to convert our motion to dismiss to a motion for summary judgment. *See* ECF No. 20 (Pl. Resp.) at 1. On August 26, 2022, we moved to stay consideration of the merits of plaintiff's claims, to deny the request to convert defendants' motion to dismiss, and to extend the time to file a reply in further support of our motion to dismiss. *See* ECF No. 21. The Court granted our motion, ordering a partial stay of the merits,

denying plaintiff's attempt to convert our motion, and setting a new deadline for our reply.  *See* ECF No. 22.[1]

On September 6, 2022, before we filed our reply, the Court of Appeals for the Federal Circuit (Federal Circuit) issued its decision in *ARP Materials, Inc. v. United States*, 47 F.4th 1370 (Fed. Cir. 2022).  The Federal Circuit held that the administration of section 301 duty refunds "presents exactly the scenario in which § 1514's protest provisions can be invoked because Customs engaged in some sort of decision-making process."  *Id.* at 1378-1379 (quotations omitted).  "Because a remedy would have been available under § 1581(a) had the importers timely protested Customs' classification decisions, [the importers] cannot invoke the Court of International Trade's residual jurisdiction under § 1581(i) unless they show that the relief in § 1581(a) would have been manifestly inadequate."  *Id.* at 1379.  The remedy under § 1581(a) was not "manifestly inadequate" and jurisdiction under § 1581(i) therefore was not available.  *Id.* at 1379-1380.

On September 7, 2022, after holding a video conference with the parties, the Court ordered that "Plaintiff shall file a supplemental brief, limited to 10 pages, addressing the relevance of the Federal Circuit's reasoning in *ARP Mats., Inc. v. United States*, Court No. 2021-2176."  ECF No. 25.  The Court also ordered that "[t]he deadline for Defendant's reply in support of its motion to dismiss is extended to Tuesday, October 11, 2022, and Defendant may

---

[1] As a result of the partial stay of the merits, this reply does not respond to the portions of plaintiff's response addressing its entitlement to the claimed exclusion, *see*, *e.g.*, Pl. Resp. at 1-2, 17-19 and Ex. D (affidavit of plaintiff's Director of Supply Chain Management), nor do we respond to Plaintiff's Statement Of Material Facts As To Which No Genuine Issue Exists.  *See* ECF No. 20-2.  We reserve the right to respond to all of plaintiff's arguments and its statement of material facts, and to submit our own statement of additional material facts as to which there is no genuine issue to be tried, *see* USCIT Rule 56.3, in the event the Court denies our motion to dismiss and this case ultimately proceeds to summary judgment.

incorporate any response to Plaintiff's supplemental brief therein." *Id.* After our motion for an extension, the Court ordered our reply to be filed by October 25, 2022. *See* ECF Nos. 29 and 30.

On September 17, 2022, plaintiff filed its supplemental brief purportedly setting forth multiple grounds for distinguishing the present case from *ARP Materials*. *See* ECF No. 26 (Pl. Supp. Br.). However, as we explain below, these grounds either represent a misguided attempt to invoke the "major questions doctrine," *see West Virginia v. EPA*, 142 S. Ct. 2587 (2022), or they are an unfounded attempt to relitigate *ARP Materials*. None of the reasons plaintiff sets forth in its supplemental brief, or in its original response to our motion to dismiss, provide any basis for departing from the Federal Circuit's reasoning in *ARP Materials* when it found that subject-matter jurisdiction under section 1581(i) is unavailable. We also explain below why none of plaintiff's arguments as to why it is entitled to amend its summons to identify protest numbers has merit, and why, as a result, the Court lacks subject-matter jurisdiction over its claims brought pursuant to section 1581(a). The final section of our reply explains why, in the alternative, plaintiff has failed to state a claim for which relief may be granted, including with respect to Constitutional claims raised for the first time in its opposition to our motion to dismiss. For these reasons, we respectfully request that the Court grant our motion and dismiss this case.

## I.   The Court Lacks Subject Matter Jurisdiction Over The Test Cases

For the reasons set forth in this reply, and in our motion to dismiss, the Court should dismiss the test cases for lack of section 1581(a) subject matter jurisdiction.

### A.  The Court Lacks Subject Matter Jurisdiction Under 28 U.S.C. § 1581(a)

The Court lacks jurisdiction pursuant to 28 U.S.C. § 1581(a) because plaintiff's summons was jurisdictionally defective, and it cannot amend the summons to add time-barred protests.

Plaintiff admits that its summons did not identify the relevant protest numbers.[2]  *See* Pl. Resp. at 23, 36.  Plaintiff tries to argue, however, that the Court has jurisdiction because "timely filed protests were timely identified in the timely filed complaint simultaneously filed with the summons in this case," *see id*. at 23, and that the summons and complaint constituted a "continuous chain of documents."  *Id.* at 21.  Plaintiff also argues that the government has not suffered prejudice from its failure to list protest numbers in the summons.  *Id.* at 4, 22-23, 30, 35 and 37.  Finally, plaintiff seeks to distinguish the present case from *DaimlerChysler Corp. v. United States*, 442 F.3d 1313 (Fed. Cir. 2006).  *Id.* at 30, 33-37.  None of plaintiff's arguments establishes jurisdiction under 28 U.S.C. § 1581(a).

### i.    A Complaint Cannot Cure Jurisdictional Defects In The Summons

First, plaintiff is wrong that filing a complaint and summons together constitutes a "continuous chain of documents" that can cure jurisdictional defects in the summons.  Pl. Resp. at 21.  Plaintiff cites no authority demonstrating that the summons *and* the complaint establish the Court's jurisdiction.  Rather, as we explained in our motion to dismiss, "the summons must establish the court's jurisdiction."  *DaimlerChrysler*, 442 F.3d at 1318; *see also* 28 U.S.C. § 2632(b) (a civil action contesting the denial of a protest "shall be commenced by filing . . . a summons").  Thus, for cases brought pursuant to 28 U.S.C. § 1581(a), jurisdiction "attaches only

---

[2] The parties agree that 4 protests were timely filed, Protest Nos. 4601-21-127895, 4601-21-127966, 4601-21-128225 and 4601-21-128666.  *See* Pl. Resp. at 2, fn 1.  However, it is inaccurate to state that "CBP treated the protest of the liquidation of twenty entries that appeared on [Protest Nos. 4601-21-127857, 4016-21-127895, and 4601-21-130013] as having been denied against 4601-21-127895."  *Id.*  Rather, Protest No. 4601-21-130013 covers 23 entries, including all 20 entries covered by Protest No. 4016-21-127895, and one entry covered by Protest No. 4601-21-127857 does not repeat in any subsequent timely protest.  The three protests listed were not "denied against" any other protest.  Rather, Protest Nos. 4601-21-127857 and 4016-21-127895 were denied for a lack of information, and Protest 4601-21-130013 was denied because it covered entries that had all already been covered in four other protests that had already been denied.

to protests identified on the summons." *Otter Prod., LLC v. United States*, 532 F. Supp. 3d 1345, 1350 (Ct. Int'l Trade 2021) (citing *DaimlerChrysler*, 442 F.3d at 1319).

As a result, the Court should not consider protest numbers referenced in an exhibit to the complaint in determining whether plaintiff's summons established jurisdiction over any protest denials pursuant to 28 U.S.C. § 1581(a). Because the summons identified no protests, *see* ECF No. 1, the Court should find that it did not establish jurisdiction with respect to these claims.

Moreover, as we explained in our motion to dismiss, even if the Court were to consider plaintiff's contemporaneously-filed complaint (which it should not), the complaint does not explicitly state which protests plaintiff challenges pursuant to 28 U.S.C. § 1581(a). *See* Def. Mot. at 19-20. Plaintiff alleges that its complaint provided sufficient notice, presumably because a column in the attached exhibit entitled "Liquidation/ Protest" stated that "(x=1581(i) only)," and some rows of entries/protests contained an "x." Even if it could be inferred that the remaining rows represent the entries/protest decisions that plaintiff challenges pursuant to 28 U.S.C. § 1581(a), the Government should not be presumed to be on notice when the so-called "notice" requires inference and analysis. *Shulthis v. McDougal*, 225 U.S. 561, 569 (1912) ("It is not enough that grounds of jurisdiction ... may be inferred argumentatively from the statements in the [initial pleading], for jurisdiction cannot rest on any ground that is not affirmatively and distinctly set forth.")).

Therefore, even if plaintiff were able to show that a complaint and summons filed together creates a "continuous chain of documents," plaintiff's original summons and complaint read together would still not cure plaintiff's jurisdictional defects.

### ii.     The Factor Of Material Prejudice Is Not Applicable

Second, the motion to dismiss does not turn on whether the Government has suffered

material prejudice from plaintiff's failure to identify protest numbers in its summons.  *See* Pl.

Resp. at 3-4 (stating that "[d]efendants have made no allegation of material prejudice," citing

USCIT R. 3(e) and *Zenith Electronics Corp. v. United States,* 988 F.2d 1573, 1580 (Fed. Cir.

1993)).

In arguing this point, plaintiff correctly cites USCIT R. 3(e).  *See* USCIT R. 3(e) ("the

court may allow a summons to be amended at any time on such terms as it deems just," unless

"material prejudice would result.").  However, this rule does not apply here.  As we explained in

our motion to dismiss, USCIT R. 3(e) does not cure the jurisdictional defects in plaintiff's

summons, nor does it expand the Court's jurisdiction to the time-barred protests that plaintiff

seeks to add to its amended summons.  *See* Def. Mot. at 22, fn 7 (citing *DaimlerChrysler*, 442

F.3d at 1322).  Plaintiff cites no authority that supports relying on USCIT R. 3(e) to expand the

Court's jurisdiction in this case.

Likewise, the *Zenith* case on which plaintiff relies is inapposite.  Plaintiff notes that

*Zenith* "held that this court does not abuse its discretion when it allows the amendment of a

summons under USCIT R. 3(d), which is now designated 3(e)."  Pl. Resp. at 3-4 (discussing

*Zenith,* 988 F.2d at 1580 and quoting USCIT R. 3(e)).  *Zenith*, however, is distinguishable.

The Court in *Zenith* allowed the plaintiff to amend its summons to identify the antidumping

determination at issue, after plaintiff listed an incorrect determination number in its original

summons.  *Zenith,* 988 F.2d at 1580.  Upon receiving a copy of the summons, the Government

"immediately knew something was amiss because the determination noticed in the summons had

already been fully litigated." *Id.* Here, on the other hand, plaintiff failed to list any protest numbers in the summons.

While the Court in *Zenith* concluded that Commerce "suffered no prejudice," and that "mere technical irregularities in the filing of procedural papers shall not deprive a party of its statutory right of review," *see id.* (quotations omitted), this conclusion still does not demonstrate that prejudice is a relevant factor in the present case. Indeed, *Zenith* makes no mention of the misidentified determination being time-barred. Because *Zenith* does not address the question of whether an agency must demonstrate material prejudice to successfully oppose a motion to amend a summons to add *time-barred determinations*, it did not adjudicate this issue.

For these reasons, and those set forth in our motion to dismiss, there is no requirement of material prejudice to prevail on the present motion to dismiss. Allowing plaintiff to prevail on this issue would set a precedent that would negatively impact CBP's ability to meet its obligations in responding to challenges brought under 28 U.S.C. § 1581(a). For example, CBP is required to comply with the requirements of USCIT Rule 73.1, which requires the agency to file protest and entry documents with the Court within 90 days of the filing of an action. It is essential for CBP to have clear, immediate notice that a plaintiff is bringing a claim under section 1581(a), along with the protests that are being challenged. Requiring CBP to find and scrutinize documents beyond the summons when complying with USCIT Rule 73.1 would place a burden on the agency not found in the law.

### iii. *DaimlerChrysler* Supports Dismissing Plaintiff's Claims Under 28 U.S.C. § 1581(a)

Plaintiff also argues that the holding in *DaimlerChrysler* should not preclude subject-matter jurisdiction under 28 U.S.C. § 1581(a). Specifically, plaintiff notes that, "[i]n *Daimler* there was no claim that the protest numbers appeared in other documents filed with the

summons," *see* Pl. Resp. at 36, whereas in this case, the relevant protest numbers are identified

in an exhibit to the complaint.  Thus, plaintiff concludes, "the notice function of the summons

was served by the complaint in this case, as it is in federal district court." *Id.*

As we explained in our motion to dismiss, the summons alone must provide the

Government notice of an importer's claims.  Def. Mot. at 17-18.  Indeed, "the notice function of

the summons is similar to that of a complaint in federal district court." *DaimlerChrysler*, 442

F.3d at 1320.  The reason a summons must specifically identify the challenged protest decisions

is that the Government cannot "assume that all related protests are intended to be included in a

given suit," because an importer "may omit particular protests in a summons in order to preserve

the right to relitigate the issue." *Id.* at 1321.  Thus, the Court should only look to the summons to

determine whether the Government was properly on notice regarding plaintiff's claims under 28

U.S.C. § 1581(a).  Here, the summons provided no protest numbers, and it therefore did not

satisfy the notice requirement.

In attempting to distinguish *DaimlerChrysler*, plaintiff discusses several other authorities

that ultimately do not affect the outcome of this dispute.  *See* Pl. Resp. at 34-37 (discussing

*Pollak Import-Export Corp. v. United States,* 52 F.3d 303 (Fed. Cir. 1995), *Zenith,* 988 F.2d at

1580 and U.S.C.I.T. R. 18).

First, plaintiff cites *Pollak Import-Export Corporation v. United States,* 52 F.3d 303

(Fed. Cir. 1995), which is distinguishable from the present case in that it involved the failure to

list entries in a summons, which does not deprive the Court of jurisdiction over those entries.

*See DaimlerChrysler*, 442 F.3d at 1316-1317 (discussing *Pollak,* 52 F.3d at 306).  Because

*Pollack* "did not address, explicitly or implicitly, the jurisdictional effect under the statute of the

failure to list the protest numbers" in the summons, the court in *DaimlerChrysler* held that *Pollack* did not govern that issue.  *Id.* at 1317.

Second, plaintiff again cites *Zenith Electronics Corporation v. United States,* 988 F.2d 1573 (Fed. Cir. 1993), noting that there, the Court allowed an importer to amend its summons to correctly identify the challenged determination, "on the ground that other documents correctly identified by number the antidumping determination that [the importer] sought to challenge."  Pl. Resp. at 36 (citing *Zenith,* 988 F.2d at 1580).  *Zenith* is again distinguishable.  There, "[o]ther documents *accompanying the summons*—the transmittal letter and information sheet—correctly identified the [challenged determination]," and the Court concluded that these documents as a whole "satisfied the trial court's requirements for a summons."  *Zenith*, 988 F.2d at 1579-1580 (emphasis added).  Here, on the other hand, the protest numbers were only referenced in an exhibit to the Complaint, and a complaint exhibit should not be characterized as a document "accompanying the summons."  While plaintiff in this case filed the summons and complaint on the same day, an importer is not required to file a complaint to initiate an action under 28 U.S.C. § 1581(a).  In fact, Congress explicitly rejected such a requirement in amending the Court's jurisdictional statute in 1980.  *See DaimlerChrysler*, 442 F.3d at 1318 (discussing Pub.L. No. 96–417 § 201, 94 Stat. 1727, 1728–29, 96th Cong.2d Sess. (Oct. 10, 1980)).

Although the court in *DaimlerChrysler* refrained from deciding "whether, if a protest is misidentified in the summons, the court may look to other contemporaneously filed documents to determine the correct protest number," *see* 442 F.3d at 1320, it concluded that "[i]f anything, *Zenith* underscores the importance of stating necessary jurisdictional facts . . . on the face of the summons documents."  *Id.* at 1320.  Because a complaint and summons are often not filed concurrently in section 1581(a) actions, a complaint should not be considered a "summons

document," and *Zenith* should not be interpreted as allowing plaintiffs to cure a jurisdictionally-deficient summons by way of their complaint, regardless of when a complaint is filed.

Third, plaintiff's citation to the Court's joinder rule, USCIT R. 18, is misguided. Plaintiff argues that Rule 18 demonstrates that the Court "encourage[s] the joinder of claims involving a common issue," and that "[t]he rules are silent on the filing of more than one summons in the event that a case has more than one jurisdictional basis." Pl. Resp. at 34. The present case, however, does not involve the joinder of claims under USCIT R. 18. In any case, an action under 28 U.S.C. § 1581(a) "shall be commenced by filing . . . a summons," *see* 28 U.S.C. § 2632(b), not by filing "more than one summons." Pl. Resp. at 34. Here, because plaintiff should not be allowed to amend its summons to add time-barred protests, jurisdiction should be determined based on whether the original summons correctly identified the protests that plaintiff seeks to challenge. *See* Def. Mot. at 17 (citing *Otter Prod.,* 532 F. Supp. at 1350) ("jurisdiction under 28 U.S.C. § 1581(a) attaches only to protests identified on the summons.").

Finally, plaintiff notes that we "consented to the amendments granted by the court on June 23, 2022, but reserved the right to contest the substance of the amendments," seemingly in another attempt to distinguish the present case from *DaimlerChrysler.* Pl. Resp. at 35. As we explained in our motion to dismiss, we only consented to plaintiff revising its first motion to amend, not to the filing of either an amended summons or an amended complaint. Def. Mot. at 11.

For these reasons, and those set forth in our motion to dismiss, the Court should find that it lacks subject-matter jurisdiction pursuant to 28 U.S.C. § 1581(a).

**B. The Court Lacks Subject Matter Jurisdiction Under 28 U.S.C. §1581(i)**

As an initial matter, 28 U.S.C. § 1581(i) is a residual grant of jurisdiction that "may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate." *Sunpreme Inc. v. United States*, 892 F.3d 1186, 1191 (Fed. Cir. 2018) (quotation omitted).

Turning to plaintiff's specific claims under 28 U.S.C. §1581(i), it challenges the "'requiring' of the filing of protests as a condition precedent to the issuance of refunds pursuant to exclusion decisions by the USTR." Pl. Resp. at 23. This so-called "Protest Requirement," plaintiff claims, constituted a "mistaken overreaching of statutory authority by CBP." *Id.* Plaintiff is wrong. For the reasons set forth in this reply, and in our motion to dismiss, the Court should find that it lacks jurisdiction pursuant to USCIT Rule 12(b)(1).

**i.     There Is Clear Statutory Authority To Require The Filing Of Timely Protests To Refund Section 301 Duties**

On September 6, 2022, the Federal Circuit held that the administration of section 301 duty refunds "presents exactly the scenario in which § 1514's protest provisions can be invoked because Customs engaged in some sort of decision-making process." *ARP Materials*, 47 F.4th at 1378-1379 (quotation omitted). As the Court explained:

> These classification decisions are necessarily protestable "decisions" because "[p]roper classification of goods under the HTSUS" requires the agency to "first ascertain[] the meaning of specific terms in the tariff provisions and then determin[e] whether the subject merchandise comes within the description of those terms"—the first question being one of law, the second being one of fact. *Millenium Lumber Distrib. Ltd. v. United States*, 558 F.3d 1326, 1328 (Fed. Cir. 2009). Customs made substantive legal determinations—interpreting the HTSUS subheadings—and factual determinations—determining whether the entries fell within those subheadings—that it had the authority to make. *See Hutchison*, 827 F.3d at 1362 ("Indeed, when Customs makes a decision to liquidate, that decision is '[m]ore than passive or ministerial' and 'constitute[s] a "decision" within the context of § 1514(a).'"

<blockquote>(alterations in original) (quoting <em>Cemex, S.A. v. United States</em>, 384<br>
F.3d 1314, 1324 (Fed. Cir. 2004))).</blockquote>

<em>Id</em>. at 1378.  Thus, "[b]ecause the importers contend that USTR's exclusions rendered Customs' classifications of their entries erroneous, they were statutorily obligated to timely protest under 19 U.S.C. § 1514(a)(2)."  <em>Id</em>. at 1379.

 <em>ARP Materials</em> plainly rejects plaintiff's claim that CBP acted beyond the scope of its statutory authority by requiring importers to file timely protests, as the Federal Circuit correctly identified "Customs' classification decisions" as the "source of [the importers'] alleged harm." <em>Id.</em> at 1378.  This, in turn, refutes plaintiff's attempt to characterize CBP's role in administrating section 301 duty refunds as a "limitations placed on the decisions to exclude certain items from the application of the China 301 duties."  Pl. Resp. at 14.  <em>ARP Materials</em> involved the same List 2 trade action as the present case, the same exclusion process by USTR, and the same process for administering section 301 duty refunds by CBP.  Just as importers were obligated to file timely protests in <em>ARP Materials</em>, they were obligated to do so here too.

  **ii. Plaintiff Provides No Reason Why The Court Should Depart From The Holding By The Federal Circuit In *ARP Materials***

 Plaintiff's supplemental brief (<em>see</em> Dkt. 26, hereinafter "Pl. Supp. Br.") sets forth four grounds for allegedly differentiating the present case from <em>ARP Materials</em>: (1) the Federal Circuit's lack of consideration of <em>West Virginia v. EPA</em>, 142 S. Ct. 2587 (2022), <em>see</em> Pl. Supp. Br. at 5-6; (2) an argument that plaintiff labels "The True Nature of the Case", <em>see id.</em> at 6-8; (3) an argument that plaintiff labels "De facto Action and De jure Authority," <em>see id.</em> at 8-9; and (4) "the fact that plaintiff had filed timely protests on some of the entries" in the present case.  <em>Id.</em> at 9.  None, however, provide a basis for departing from the holding in <em>ARP Materials.</em>

 <em>First</em>, in <em>West Virginia</em>, the Supreme Court struck down an agency regulation pursuant to the "major questions doctrine," which applies in certain "extraordinary" cases and requires clear

13

authorization from Congress for agency action.  *West Virginia*, 142 S. Ct. at 2608.  Plaintiff, however, did not plead a claim under this doctrine in its complaint, and it is "axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Coleman v. Pension Benefit Guar. Corp.*, 94 F. Supp. 2d 18, 24 n.8 (D.D.C. 2000) (quotation omitted).  Even if this claim were properly pled (it was not), we explain in detail in Section II(B)(i) below why the present case does not invoke the major questions doctrine.  *See infra* at 19-21.  In any case, CBP acted pursuant to clear authorization from Congress in administering section 301 duty refunds.  *Id.* (discussing 19 U.S.C. § 1514(a)(2)).

*Second*, the "True Nature of the Case" section in plaintiff's supplemental brief is another attempt to differentiate *ARP Materials* based on the *West Virginia* case.  *See* Pl. Supp. Br. at 6-7 ("the overreaching by CBP [with respect to administering section 301 duty refunds] must be viewed in the same way the actions taken by the EPA in *West Virginia* as a FIRST encroachment by CBP beyond any legislative authority, not as an already acceptable exercise of delegated authority.") (emphasis in original).  Once again, the present case does not implicate the major questions doctrine at issue in *West Virginia*.  In administering section 301 duty refunds, CBP did not promulgate any new rules, let alone "transform" its regulatory authority, nor did it rely on a rarely-used statute intended as a gap filler.  *See infra* at Section II(B)(i) (discussing *W. Virginia*, 142 S. Ct.  at 2610).  Rather, CBP acted pursuant to clear, longstanding authority delegated by Congress "in exactly the scenario in which § 1514's protest provisions can be invoked."  *ARP Materials,* 47 F.4th at 1378-1379; *see also* 19 U.S.C. § 1514(a)(2).

*Third*, plaintiff claims that there was "no *de jure* basis for protests to be filed," but that *de facto*, the protest requirement amounted to CBP "substitut[ing] its power in lieu of the authority vested in the USTR."  Pl. Supp. Br. at 8-9 (discussing 19 U.S.C. § 2171(f)).  However, this is

simply an attempt to relitigate *ARP Materials*, which found that the administration of section 301 duty refunds "presents exactly the scenario in which § 1514's protest provisions can be invoked because Customs engaged in some sort of decision-making process." *ARP Materials*, 47 F.4th at 1378-1379 (quotation omitted). Thus, the Federal Circuit undoubtedly found a "*de jure* basis for protests to be filed," and this Court should apply the same reasoning. Moreover, CBP did not substitute any power in lieu of that vested in USTR by Congress. Rather, USTR clearly directed importers to CBP for guidance on how to claim the benefit of granted exclusions. *See List 2 Exclusion Procedures*, 83 Fed. Reg. at 47,236; *October 2019 Notice of Product Exclusions*, 84 Fed. Reg. at 52,554.[3] And, as plaintiff itself notes, 19 U.S.C. § 2171(f) authorizes USTR "to enlist the assistance of other federal agencies" in the administration of its functions. Pl. Supp. Br. at 8.

*Fourth*, "the fact that plaintiff had filed timely protests on some of the entries" simply means that the holding in *ARP Materials* does not govern the disposition of plaintiff's claims related to these entries. Pl. Supp. Br. at 9. Rather, these claims will either be dismissed for the reasons explained in Section I(A) or litigated pursuant to 28 U.S.C. § 1581(a).

Plaintiff also asserts that *ARP Materials* is "not final on the parties therein [and] it cannot control the cases of other litigants. Pl. Supp. Br. at 2. In addition, on October 4, 2022, appellants moved for panel rehearing and for rehearing *en banc*. *See ARP Materials et. al. v. United States*, CAFC Docket No. 21-2176, ECF No. 41. While plaintiff is correct that the opinion in *APR Materials* is not yet final, the panel did not err in its decision, and plaintiff has not shown that the case warrants rehearing, either by the panel or the Court of Appeals *en banc*.

---

[3] The abbreviations of Federal Register notices used herein are the same as the abbreviations used in our opening motion to dismiss.

*See* Fed. Cir. R. 35(e)(1)(F) and Fed. Cir. R. 40(a)(5) (requiring petition for rehearing *en banc* or petition for panel rehearing to include "the points of law or fact" "overlooked or misapprehended" by the Court); *see also* FRAP 35(a)(1) and (2) (rehearing *en banc* is disfavored and will not be ordered unless "consideration is necessary to secure or maintain uniformity of the court's decisions" or "the proceeding involves a question of exceptional importance.").

The remaining arguments in plaintiff's response brief also lack merit.  For example, plaintiff cites a report prepared by the U.S. Government Accountability Office (GAO Report), arguing that it "makes no mention of protest administration by CBP."  Pl. Resp. at 31.  However, any reliance on this report is misguided, as it only "(1) examines what processes the Office of the U.S. Trade Representative (USTR) used to review exclusion requests and extension and (2) describes how USTR evaluated exclusion requests and extensions, and the outcome of its decisions."  GAO Report at Appendix I: Objectives, Scope, and Methodology.  Thus, the GAO Report focuses on USTR's decision-making process—which is not at issue in this case—and only mentions CBP's process for administrating section 301 duty refunds at a very high level. *See*, *e.g.*, GAO Report at 23, fn 33 ("Since exclusions were retroactive, CBP also provided guidance to importers on how to request reimbursement of Section 301 tariffs paid on previous imports of products for which USTR later granted exclusions.").  Given its limited scope, the GAO Report is not relevant here.

Finally, plaintiff states that the Court can exercise its equitable powers to "order reliquidation that will result in a refund, even if a protest was never filed," citing 28 U.S.C. § 1585.  Pl. Resp. at 43.  However, plaintiff does not, and cannot, cite any authority that would allow it to circumvent the timely protest requirement and claim equitable relief under 28 U.S.C. § 1585.  In fact, numerous importers have tried, and failed, to make this exact type of claim

under 28 U.S.C. § 1581(i).  *See, e.g.*, *ARP Materials*, 47 F.4th at 1378; *see also Alden Leeds Inc.*

*v. United States*, 476 F. App'x 393, 398 (Fed. Cir. 2012) (an importer "cannot circumvent the

timely protest requirement by claiming that its own lack of diligence requires equitable relief

under 28 U.S.C. § 1581(i)") (quotation omitted); *Juice Farms, Inc. v. United States*, 68 F.3d

1344, 1346 (Fed. Cir. 1995) (same).  Plaintiff cannot claim a right to equitable relief under 28

U.S.C. § 1585, 28 U.S.C. § 1581(i), or any other authority when it was statutorily obligated to

file a timely protest if it wished to correct the classification of its entries.

      In sum, CBP was not only authorized, it had no other option but to use the protest

mechanism to administer section 301 duty refunds with respect to entries that had already

liquidated.  As a result, plaintiff was bound by the requirements of 19 U.S.C. § 1514(a),

including the requirement that entries become final and conclusive if not protested within 180

days of liquidation.  For the reasons explained above and in our motion to dismiss, the Court

should dismiss the test cases for lack of jurisdiction pursuant to USCIT R. 12(b)(1).

## II.    <u>Plaintiff Failed to Plead A Claim Upon Which Relief Can Be Granted</u>

      Our motion to dismiss also demonstrated that, in the alternative, plaintiff's amended

complaint should be dismissed under USCIT R. 12(b)(6) because it is largely devoid of factual

allegations, and because it fails to identify a legal basis for plaintiff's claims.  Def. Mot. at 33-34.

In response, plaintiff claims that it has "provided a detailed recitation of the facts," *see* Pl. Resp.

at 24, but none of plaintiff's claims plausibly entitle it to relief.

      We address all of plaintiff's alleged claims below.  However, we first note that the Court

should not consider claims first raised by plaintiff in its opposition to our motion to dismiss.  It is

"axiomatic that a complaint may not be amended by the briefs in opposition to a motion to

dismiss."  *Coleman*, 94 F. Supp. at 24 n.8 (D.D.C. 2000) (quotation omitted); *see also Al-*

*Saadoon v. Barr*, 973 F.3d 794, 804-805 (8th Cir. 2020) (same).   "To hold otherwise would

mean that a party could unilaterally amend a complaint at will."   *Statewide Bonding, Inc. v.*

*United States Dep't of Homeland Sec.*, 980 F.3d 109, 117 n.5 (D.C. Cir. 2020) (citation omitted).

As a result, any unpled claims are not properly before the Court.   *Id.*   Indeed, "[t]he 'purpose of a

motion to dismiss is to assess the validity of the *pleadings*.'"   *Id.* (quoting *Henthorn v. Dep't of*

*Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994) (emphasis in original).

### A.        Plaintiff Has Not Pled An APA Claim That Entitles It To Relief

First, plaintiff alleges that defendants acted "not in accordance with the law" and "in

excess of statutory authority," citing the APA.   *See* Am. Compl. at ¶ 24 (citing 5 U.S.C. §

706(2)(A) and (C)).   However, for the reasons explained above, and in our motion to dismiss,

plaintiff has failed to plead an APA claim that defendants acted "not in accordance with the law"

or "in excess of statutory authority."

Plaintiff also alleges, for the first time in its opposition, an APA claim that appears to be

based on CBP's alleged failure to place notice in the Federal Register of its procedures for

administering section 301 duty refunds.  Pl. Resp. at 44 ("In fact, under the [APA] no person can

be adversely affected in any manner by matter required to be published in the Federal Register

and NOT so published").   Even assuming that plaintiff had included this claim in its amended

complaint, such that it was properly before the Court (it is not), it has failed to plead any such

claim upon which relief could be granted.

The APA only requires an agency to place notice of proposed "rules" in the Federal

Register.  5 U.S.C. § 553(b).   Such "[r]ules" are "often referred to as 'legislative rules' because

they have the 'force and effect of law."   *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015)

(citing *Chrysler Corp. v. Brown,* 441 U.S. 281, 302 (1979) (quotations omitted)).   A legislative

rule is defined as "[a]n agency action that purports to impose legally binding obligations or

prohibitions on regulated parties—and that would be the basis for an enforcement action for violations of those obligations or requirements." *Nat'l Min. Ass'n v. McCarthy*, 758 F.3d 243, 251 (D.C. Cir. 2014).

CBP's procedures for administering refunds of section 301 duties did not constitute "rules" for APA purposes.  Importantly, List 2 imposed the obligation to pay section 301 duties on certain goods, and USTR's exclusions granted the right to exclude certain goods from that list.  CBP's actions, however, granted no new rights or obligations.  Rather, CBP simply issued guidance instructing importers how to claim the benefit of product exclusions granted by USTR. *See* Def. Mot. at 6-7.  Just like the importers in *ARP Materials*, plaintiff was "statutorily obligated to timely protest under 19 U.S.C. § 1514(a)(2)" if it wished to correct that classification.  *ARP Materials*, 47 F.4th at 1379.  CBP did not issue a new "rule" by instructing importers to protest liquidated entries in accordance with an existing statue in order to benefit from section 301 exclusions.  As a result, the APA did not require CBP to place its administrative procedures in the Federal Register.

In any case, USTR and CBP provided importers ample notice of the procedures for claiming section 301 exclusions.  First, USTR issued a Federal Register Notice detailing exclusion request procedures.  *List 2 Exclusion Procedures*, 83 Fed. at Reg. 47,236-47,238. USTR's FAQs, 301 Website and hotline also informed importers how to request exclusions and track those filed by other importers.  USTR also directed importers to CBP for guidance on claiming the benefit of exclusions once they had been granted.  *See List 2 Exclusion Procedures*, 83 Fed. Reg. at 47,236; *October 2019 Notice of Product Exclusions*, 84 Fed. Reg. at 52,554. And, finally, CBP's CSMS messages instructed importers to file protests to preserve any rights to refunds of section 301 duties assessed on entries that had already liquidated.  *See* CSMS

19

#40208881 and #19-000260.  Plaintiff's failure to follow these procedures reflects its own lack of diligence, not an APA violation by USTR or CBP.

**B.      Plaintiff Has Not Pled Any Constitutional Claims That Entitle It To Relief**

Plaintiff also raises, for the first time in its opposition to our motion to dismiss, multiple Constitutional claims.  Specifically, plaintiff invokes the Legislative Vesting Clause, *see* Pl. Resp. at 5, 11 (citing U.S. CONST., art. I, § 1) ("All legislative Powers herein granted shall be vested in a Congress of the United States . . ."), as well as the Due Process Clause.  *Id.* at 11, 45-46 (citing U.S. CONST. amend. V) ("No person shall ... be deprived of life, liberty, or property, without due process of law") (emphasis omitted).  Neither claim has merit.

**i.      Plaintiff Has Not Plead A Claim Under The Legislative Vesting Clause That Entitles It To Relief**

First, plaintiff argues that CBP acted contrary to the Constitution's Legislative Vesting Clause by requiring importers to protest entries in claiming section 301 duty refunds.  CBP's "non-legislative expansion of the Protest statute," plaintiff claims, was "contrary to the holding of the U.S. Supreme Court ("SCOTUS") in *West Virginia v. EPA*, 142 S. Ct. 2587 (2022) ('*West Virginia*') and cases upon which the majority relied, which emphasized the constitutional requirement that agencies of the federal government act within their specifically delegated authority and not usurp the legislative power of the Congress vested under the Legislative Clause."  Pl. Resp. at 5, 39 (citations omitted).

The *West Virginia* case cited by plaintiff involved the "major questions doctrine," which, as explained by the Supreme Court, is rooted in "both separation of powers principles and a practical understanding of legislative intent."  *W. Virginia*, 142 S. Ct. at 2609.  The major questions doctrine only applies in certain "extraordinary" cases involving "major policy decisions," which the Court described as "decisions of vast economic and political significance";

assertions of "extravagant statutory power over the national economy"; and assertions of "highly consequential power beyond what Congress could reasonably be understood to have granted." *Id.* at 2605, 2609 (quotations omitted).  Additional indicia of a "major questions case" may be that the agency interpreted longstanding statutory authority in a "novel" or "unprecedented" way to adopt the major policy, and that that policy decision is not within the agency's expertise.  *Id.* at 2596, 2605, 2612-2613.  When this doctrine applies, it requires an agency to point to "clear congressional authorization" for the authority it claims.  *Id.* at 2609 (quotations omitted).  It does not suffice for the agency to identify "ambiguous statutory text" or a "merely plausible textual basis for the agency action."  *Id.* (quotations omitted).

Even if a claim under the Legislative Vesting Clause were properly before the Court (which it is not, because plaintiff did not plead it in its complaint), plaintiff has failed to plead facts demonstrating either that (1) this case triggers the "major questions doctrine," or that (2) USTR or CBP acted without "clear congressional authorization."

First, the present case does not trigger the major questions doctrine.  In *West Virginia*, the Supreme Court invoked this doctrine to strike down agency action that was based on authority from "vague language of a long-extant, but rarely used, statute designed as a gap filler," and that "represent[ed] a transformative expansion of [the agency's] regulatory authority."  *W. Virginia*, 142 S. Ct. at 2595, 2610.  The challenged action, the Clean Power Plan, involved a sector-wide shift in electricity production from coal to natural gas and renewables, thereby enacting a regulatory program that Congress had "conspicuously and repeatedly declined to enact itself." *Id.* at 2593, 2610.  In administering section 301 duty refunds, on the other hand, CBP did not promulgate any new rules, let alone "transform" its regulatory authority, nor did it rely on a rarely-used statute intended as a gap filler.  Rather, CBP relied on longstanding authority

delegated by Congress "in exactly the scenario in which § 1514's protest provisions can be invoked." *ARP Materials,* 47 F.4th at 1378-1379; 19 U.S.C. § 1514(a).  Moreover, CBP did not interpret its statutory authority in a "novel" or "unprecedented" way.  *W. Virginia*, 142 S. Ct. at 2596, 2605, 2612-2613.  Instead, CBP invoked the protest statute with respect to "classification decisions [that] are necessarily protestable decisions," *see ARP Materials,* 47 F.4th at 1378 (quotations omitted), as it routinely does in carrying out the agency's functions.  Finally, unlike the challenged action in *West Virginia*, which the Supreme Court found to be outside the agency's "traditional expertise," *see* 142 S. Ct. at 2596, application of the protest statute falls squarely within CBP's area of expertise.

Plaintiff tries to invoke the major questions doctrine by emphasizing the breadth and significance of the section 301 trade actions themselves.  *See* Pl. Resp. at 38 ("the assessment of the China 301 duties has implications on the relationship between the United States and its primary economic competitor and the state of peace in the world"): *id.* at 39 ("the assessment of the China 301 duties affects foreign trade with China and ALL of our trading partners, U.S. labor, and domestic businesses, ALL of which are fundamental segments of the U.S. economy.") (emphasis in original).  Once again, plaintiff conflates the *issuing* of section 301 duties and exclusions with CBP's *administration* of duty refunds.  Plaintiff pleads no facts demonstrating that CBP's administrative processes affect the United States' foreign relationships or its economy at large, or that it involves any of the situations identified in *West Virginia* that may trigger the major questions doctrine, *i.e.*, "decisions of vast economic and political significance"; assertions of "extravagant statutory power over the national economy"; and assertions of "highly consequential power beyond what Congress could reasonably be understood to have granted." *W. Virginia*, 142 S. Ct. at 2605, 2609 (quotations omitted).  In short, the administration of

section 301 duties is not an "extraordinary" case that warrants departing from bedrock principles of statutory interpretation in order to apply the major questions doctrine.

Even if we assume for the sake of argument that the administration of section 301 duty refunds did present a "major question," CBP acted with clear, Congressional authorization.  As the Federal Circuit explained in *ARP Materials*, the administration of section 301 duty refunds "presents exactly the scenario in which § 1514's protest provisions can be invoked because Customs engaged in some sort of decision-making process."  *ARP Materials*, 47 F.4th at 1378-1379 (quotations omitted).  By exercising its clear authority under this statute, CBP was simply administering section 301 exclusion decisions in accordance with USTR's intent.  *See*, *e.g.*, *October 2019 Notice of Product Exclusions*, 84 Fed. Reg. at 52,554 (pointing importers to CBP for "instructions on entry guidance and implementation.").  However, even if the Court finds that the administration of section 301 duty refunds involves a novel use of the protest statute (it should not, *see ARP Materials*, 47 F.4th at 1378-1379), CBP still acted in accordance with its Congressionally-delegated authority and past agency precedent by requiring timely protests to challenge the classification "decisions" at issue here.  *See* 19 U.S.C. § 1514(a); *ARP Materials*, 47 F.4th at 1378-1379; *see also Biden v. Missouri*, 142 S. Ct. 647, 653 (2022) (per curiam) (upholding the Department of Health and Human Service's novel vaccination requirement because "there can be no doubt that addressing infection problems in Medicare and Medicaid facilities is what [the agency] does").

In sum, CBP's administration of section 301 duty refunds did not render USTR "subservient to CBP in the administration of U.S. trade policy," *see* Pl. Resp. at 41, nor was it a "usurpation of Congressional authority that involves major questions."  *Id.* at 38.

### ii.  Plaintiff Has Not Pled A Due Process Claim That Entitles It To Relief

While the nature of its Due Process claim is unclear, plaintiff states that "[t]he substitution by CBP of IMPROPER process in the form of protests is not a valid substitution for the Due Process guarantees of the 5th Amendment and the APA." Pl. Resp. at 46. In the event the Court considers this claim (which it should not, because plaintiff did not raise it in its pleadings), the Due Process Clause of the Fifth Amendment prohibits the deprivation of life, liberty, or property without due process of law. "The core of due process is the right to notice and a meaningful opportunity to be heard." *U.S. Auto Parts Network, Inc. v. United States*, 319 F. Supp. 3d 1303, 1310-11 (Ct. Int'l Trade 2018) (quoting *LaChance v. Erickson*, 522 U.S. 262, 266 (1998)).

"The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" *Int'l Custom Prod., Inc. v. United States*, 791 F.3d 1329, 1337 (Fed. Cir. 2015) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 59 (1999)). "[T]he Constitution does not provide a right to import merchandise under a particular classification or rate of duty." *A Classic Time v. United States*, 123 F.3d 1475, 1476 (Fed. Cir. 1997) (citing *Norwegian Nitrogen Products Co. v. United States,* 288 U.S. 294, 318 (1933) and *North American Foreign Trading Corp. v. United States,* 783 F.2d 1031, 1032 (Fed. Cir. 1986) ("No vested right to a particular classification or rate of duty or preference is acquired at the time of importation.")).

"Absent a right to a duty rate and its sustained existence, [an importer] cannot contest the adequacy of the process provided." *Int'l Custom Prod.*, 791 F.3d at 1337. However, "an importer participating in an administrative proceeding has a procedural due process right to 'notice and a meaningful opportunity to be heard.'" *Royal Brush Mfg., Inc. v. United States*, 483

F. Supp. 3d 1294, 1305 (Ct. Int'l Trade 2020) (quoting *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 761-62 (Fed. Cir. 2012)) (citations omitted).

Plaintiff has not pled, nor could it, that it had a protected interest that would warrant protection under the Due Process Clause. As established by the case law above, plaintiff cannot claim a protected right to a "particular classification or rate of duty," *see A Classic Time*, 123 F.3d at 1476, including the reclassification of its imported merchandise under a provision covering goods subject to a product exclusion. Rather, plaintiff only had a right to partake in the process set forth by USTR and CBP to administer the refunds of section 301 duties.

Even if we assume for the sake of argument that plaintiff has procedural due process rights with respect to the administration of the section 301 refunds (and that it properly pled such a claim, which it has not), notice and a meaningful opportunity to be heard were undoubtedly provided. Once again, USTR issued Federal Register Notices detailing exclusion request procedures. *List 2 Exclusion Procedures*, 83 Fed. at Reg. 47,236-47,238. In addition, USTR's FAQs, 301 Website and hotline all informed importers how to request exclusions, what information to include, and how to track and comment on exclusions filed by other interested parties. Likewise, plaintiff had ample notice from USTR and CBP on how to preserve its rights to any refunds of section 301 duties once exclusions were granted. *See* List 2 FAQs at 4; *October 2019 Notice of Product Exclusions*, 84 Fed. Reg. at 52,554; CSMS #40208881 and #19-000260. With respect to the entries at issue, plaintiff also had an opportunity to be heard by filing timely protests and submitting evidence to CBP demonstrating its eligibility for any section 301 duty refunds. Plaintiff's failure to file timely protests, substantiate its protests with supporting evidence and/or identify protest numbers in its summons upon challenging its protest denials does not demonstrate a lack of due process.

Finally, even if the Court reaches the question of constitutional standing, plaintiff has not

made the requisite showing.  Establishing standing requires a plaintiff to show: "(1) 'that it has

suffered a concrete and particularized injury that is either actual or imminent,' (2) 'that the injury

is fairly traceable to the defendant,' and (3) 'that a favorable decision will likely redress that

injury.'"  *Massachusetts v. EPA*, 549 U.S. 497, 517 (2007).  Here, any injury suffered by plaintiff

is not "fairly traceable to the defendant."  As set forth above, and in our motion to dismiss,

plaintiff's failure to recover section 301 duty refunds, and any injury that followed, resulted from

its own lack of diligence, not any action or inaction by USTR or CBP.

## **CONCLUSION**

For the foregoing reasons, we respectfully request that this Court dismiss plaintiff's

amended complaint because the Court does not possess subject matter jurisdiction to decide

plaintiff's claims or, alternatively, because plaintiff's amended complaint fails to state a claim

upon which relief can be granted.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:    /s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Jamie L. Shookman
JAMIE L. SHOOKMAN
Of Counsel:    Trial Attorney
Valerie Sorensen-Clark    Department of Justice, Civil Division
Office of the Assistant Chief Counsel    Commercial Litigation Branch
International Trade Litigation    26 Federal Plaza – Suite 346
U.S. Customs and Border Protection    New York, New York 10278

26

(212) 264-2107

October 25, 2022                    Attorneys for Defendants

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Jamie L. Shookman, an attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Brach, International Trade Field Office, who is responsible for the Government's reply memorandum in further support of the Government's motion to dismiss, dated October 25, 2022, relying upon the word count feature of the word processing program used to prepare the memorandum, certify that this memorandum complies with the word count limitation under the Court's chambers procedures, in light of the Court's October 7, 2022 order granting an increase in the word limitation by 1,500 words, *see* ECF No. 30, and contains 8,154 words.

<u>/s/ Jamie L. Shookman</u>